Dionisia Elisa Arabia de Goyco y Ramón G. Goyco, demandantes y apelados, *v.* Pedro Juan Armstrong, demandado y apelante.

No. 3994.—*Visto:* Diciembre 2, 1926.   *Resuelto:* Julio 19, 1927.

1. Servidumbres—Extensión del Derecho, Uso y Obstrucción—Del Derecho en General—Servidumbre de Luces y Vistas—En General.—Una terraza es un voladizo semejante a un balcón a los efectos del artículo 589 del Código Civil, sin que sea obstáculo para calificarla como tal el hecho de que se haya construído otra pared o columna para sostenerla.

2. Servidumbres—Extensión del Derecho, Uso y Obstrucción—Acciones Confesorias y Negatorias de Servidumbre—Jurisdicción.—La jurisdicción de la corte de distrito para conocer del litigio surge clara de los autos cuando se trata no solo de una acción negatoria de servidumbre de luces y vistas, si que además se prueba que la finca de los demandados fué adquirida por quince mil dólares.

3. Servidumbres—Extensión del Derecho, Uso y Obstrucción—Preceptos Estatutorios.—El artículo 589 del Código Civil no es anticonstitucional.

Sentencia de *R. H. Todd Jr., J.* (Ponce), declarando con lugar la demanda, sin costas. *Modificada y confirmada.*

*Alberto S. Poventud* y *José S. Poventud,* abogados del apelante: *R. Arjona Siaca,* abogado de los apelados.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

[1] Este es un pleito en el que se ejercita la acción negatoria de luces y vistas y se pide la clausura de ciertos huecos o ventanas dejados en pared propia contigua a suelo y cielo ajenos.   Está envuelta la interpretación del artículo 589 del Código Civil Revisado.   También su constitucionalidad.

Dionisia Elisa Arabia, dueña de cierta finca situada en la zona urbana del municipio de Ponce, y su esposo Ramón G. Goyco, demandaron a Pedro Juan Armstrong, dueño de

otra finca colindante, situada en la misma zona, pidiendo a la corte que condenara al demandado a cerrar ciertos huecos o ventanas, o a elevarlos a la altura de las carreras en la forma que determina la ley.

Que ambas partes son dueñas de sus respectivas fincas quedó demostrado en el juicio, y que el demandado adicionó a su casa cierta construcción que llega a la colindancia de su solar con el de los demandantes, es un hecho admitido.

La prueba no es larga ni complicada y existe una inspección ocular y una fotografía que permiten formar una idea bastante exacta de la construcción de que se trata. Dice el acta de inspección:

"El Juez, asistido de las partes y de sus respectivos abogados, así como del secretario y taquígrafo, se constituyó primeramente en el patio de la casa del demandado Pedro Juan Armstrong, situada en la calle Mayor: a la entrada del patio de la casa del demandado, inmediatamente después que se pasa el portón de la misma, aparece que de la pared de la casa del señor Armstrong a la pared de la colindancia con la casa de la demandante, hay tres metros 90 centímetros: que pegado a esta última pared o sea la de la colindancia, existe otra pared de un espesor de 38 centímetros que comienza en el piso del patio, en el suelo, y continúa hacia arriba con una altura de tres metros 20 centímetros de pared sólida, teniendo una extensión desde la entrada de la casa hacia dentro en el patio, de cinco metros cinco centímetros: desde la parte superior de esta última pared, aparece en el centro de la misma una columna que tiene una altura de un metro 32 centímetros y hacia ambos lados existe un arco de una longitud de un metro 84 centímetros: sobre esta columna del centro y las del otro extremo hacia arriba es que está construída la terraza. La Corte hace constar que situado el juez a dos metros de distancia de la pared divisoria de ambas propiedades, del demandante y del demandado, hacia adentro del patio del demandado, mirando hacia la propiedad del demandante, horizontalmente a la pared que ya se ha descrito, mirando hacia arriba y a través de los arcos que ya se han descrito también, que existen en la base de la terraza, se ve el cielo y el extremo superior de la casa de la demandante, en la cual existe cerca del techo una pequeña ventana, esto es, mirando por el segundo de dichos arcos o

sea el que está a la parte más adentro de la propiedad y situado en la misma posición con relación al primer arco que es el que está más próximo a la entrada de la propiedad del demandado, también mirando horizontalmente, lo único que se ve es la pared ya descrita y mirando hacia arriba y através de dicho primer arco, se ve el cielo y el extremo superior de la casa de la demandante, con la ventana ya mencionada.

"La Corte hace constar que para poder ver a través de ambos arcos que ya se han descrito, es necesario levantar la cabeza y echarla hacia atrás, como cuando una persona mira hacia el cielo.

"El Juez se trasladó a la terraza en la parte superior al patio que ya se ha descrito y medida la altura que hay desde el piso de la terraza hasta las carreras de la pared de la terraza que da hacia la propiedad del demandante, encontró que tenía una altura de dos metros 50 centímetros. Que dicha pared, en un metro de altura es de cemento y desde ahí hacia arriba es de madera. Que en esa parte de madera hay seis huecos con un enrejado cada uno de madera también, cuyos huecos tienen una altura de 42 centímetros y un ancho de 32 centímetros; que los huecos del enrejado a su vez son de 13 centímetros por 13 centímetros, que los huecos son iguales.

"La Corte hace constar que estos tres huecos existen en la pared de la terraza divisoria entre la propiedad de la demandante y el demandado.

"La Corte hace constar que el Juez, situado a dos metros de distancia de la pared divisoria de las propiedades de la demandante y el demandado en la terraza y mirando hacia la propiedad de la demandante a través de los seis huecos que se han descrito, se ve el cielo, la pared de la casa de la demandante y parte de la ventana al extremo superior de la casa de la demandante, que ya se ha descrito anteriormente.

"Terminada la inspección desde la casa del demandado, la Corte se trasladó a la casa de la demandante comenzando la inspección por el patio de dicha casa. Desde el patio de la casa de la demandante se ve que el pilar del medio sobre el cual está construída la terraza, comienza como a una distancia de cinco pulgadas más arriba de la pared divisoria de ambas propiedades y sobre la pared que se ha descrito sobre la cual está construída dicha casa. Que existe una distancia de pocos centímetros desde dicha pared divisoria a la pared sobre la cual está construída la terraza, debido a que la pared divisoria está algo inclinada hacia dentro por la parte superior del patio de la propiedad de la demandante. Que el pilar este central

divide los dos arcos o huecos que ya se han descrito con sus dimen-
siones anteriormente en esta acta. La Corte hace constar que exis-
ten dos huecos entre el pilar central y los dos pilares laterales que
constituyen la base de la terraza y no tiene inconveniente en hacer
constar que dichos dos huecos inferiores o sean los que están a la
parte baja de la terraza, no tienen enrejado alguno ni varillaje de
hierro, ni de madera, ni de ninguna clase, que son dos huecos co-
munes: que los seis huecos pequeños que existen en la terraza tie-
nen el enrejado de madera que se ha descrito.''

Declarando en el juicio el demandante Goico, en parte
dijo:

''Estos son dos pilares, parte de ellos están adheridos a la pa-
red que hace la línea divisoria de las dos propiedades: encima de
esos dos pilares viene entonces la terraza a que nos estamos refi-
riendo, dando una abertura los tales pilares a manera de ventanales
y entonces ya terminando la terraza arriba, me refiero al cuerpo de
la terraza en sí, está casi totalmente abierta con uno y otro enre-
jado de madera.

    *     *     *     *     *     *     *

''Ese enrejado existía desde luego, cuando se tomaron las foto-
grafías, hoy no existe.

    *     *     *     *     *     *     *

''Existe la misma terraza, con excepción hecha de un seto de
madera que se le puso últimamente, después de entablada la de-
manda.''

    *     *     *     *     *     *     *

''Vamos a ver si me puedo explicar más claro: al salir a la te-
rraza, el señor Armstrong irremisiblemente se enfrenta incontinenti,
de súbito con la propiedad mía o sea la habitación mía de frente,
indudablemente que tiene que percibir todo por el enrejillado de
madera y los ventanales a que yo me refiero.''

Y declarando de igual modo el demandado en el acto del
juicio, en parte, dijo:

''Esa terraza está construída sobre una muralla de concreto que
yo hice, independiente de la muralla de la colindancia y sobre tres
pilares de concreto.

\*     \*     \*     \*     \*     \*     \*

''En la parte de abajo, pues con un pequeño pilar entre medio de las dos columnas principales y la parte de arriba una terraza con un enrejado de madera cubierto casi en su mayor parte.

\*     \*     \*     \*     \*     \*     \*

Preguntado:—''¿Si usted quisiera mirar hacia el vecino, o sea hacia la propiedad de la parte demandante, necesitaría ayudarse de algo?'' Contestó:—''Tendría que subirme en una escalera o algo alto, porque no se ve, solamente se ve la claraboya del cieloraso, una pequeña ventana que hay allí para el cieloraso.''

\*     \*     \*     \*     \*     \*     \*

Preguntado: ''¿Al fin y al cabo hizo alguna · cosa allí?'' Contestó: ''Recientemente, por armonizar, pero no porque me crea obligado a hacerlo, tapié a cierta altura a la cual yo no podía ver de ninguna manera y he hecho eso como cortesía, pero no como obligación, porque me sienta obligado a hacerlo.''

Con esos hechos como base y fundándose en el artículo 589 del Código Civil revisado y en la jurisprudencia y comentaristas que cita en su opinión, el juez de distrito dictó la sentencia apelada ordenando al demandado que ''cierre los dos huecos o ventanas abiertos en la pared inferior de la construcción'', y que reforme ''los seis huecos o ventanas existentes en la segunda planta o terraza de dicha construcción . . . para ajustarlos a lo previsto en el artículo 588 del Código Civil.''

Los errores que señala el apelante en su alegato son tres. El primero se refiere a la indebida aplicación del artículo 589 del Código Civil a los hechos del caso, el segundo a la falta de jurisdicción de la corte por no haberse probado la cuantía de la cosa litigiosa y el tercero a que la ley aplicada para regular los derechos de las partes es anticonstitucional.

Aunque hubiera sido más lógico tratar primero los errores segundo y tercero, especialmente el segundo, seguiremos el orden del alegato porque en verdad es en el primero en el que se levantan las verdaderas cuestiones envueltas en este interesante litigio.

El art. 589 del Código Civil revisado, copiado a la letra en lo pertinente, dice:

"No se puede abrir ventanas con vistas rectas, ni balcones u otros voladizos semejantes, sobre la finca del vecino, si no hay dos metros de distancia entre la pared en que se construyan y dicha propiedad."

Este artículo es exactamente igual al 582 del Código Civil antiguo. Los comentaristas dicen que no tiene precedentes en el derecho romano, ni en el histórico español. Aparece por vez primera en el proyecto de Código de 1851, luego en el proyecto de Código de 1882 y por último en el Código Civil de 1889. Concuerda con preceptos análogos de los Códigos francés, italiano, belga, holandes, chileno y guatemalteco. Véanse: 4, Manresa, Comentarios al Código Civil, 765; 10, Scaevola, Código Civil 485, y 1 Pedregal, Texto y Comentarios al Código Civil español, 747. Ha sido. interpretado y aplicado varias veces por el Tribunal Supremo de España y por esta Corte Suprema de Puerto Rico. Parece conveniente referirnos aquí a los casos de *Rabell v. Rodríguez et al.*, 24 D.P.R. 561, 570; *García v. García*, 25 D.P.R. 128; *Vallecillo v. Vidal*, 33 D.P.R. 337; *Rodríguez v. Colón*, 34 D.P.R. 78, y *Vicentí v. Domínguez*, 35 D.P.R. 108.

De acuerdo con la ley, está prohibido, pues, de modo terminante en Puerto Rico la apertura, 1, de ventanas con vistas rectas, 2, de balcones y 3, de otros voladizos semejantes sobre la finca del vecino, si no hay dos metros de distancia entre la pared en que se construyan y dicha propiedad.

Con respecto a las distancias no hay cuestión en este pleito. Ambas propiedades, la de los demandantes y la del demandado, están divididas por una vieja cerca de mampostería que se distingue claramente en la fotografía presentada como prueba. Independientemente de ella, pero hasta el lado de ella misma, levantó su construcción el demandado. Antes de levantarla, la pared de su casa de la

que sale o a la que está unida la construcción estaba a más de tres metros de distancia de la línea divisoria de su solar con el de los demandantes.

Lo peculiar de este caso, lo que lo distingue de los demás resueltos hasta ahora surge cuando se trata de fijar la clase de construcción levantada por el demandado, a los efectos de juzgar y decidir si cae o no dentro de la prohibición de la ley.

El criterio de esta corte tal como quedó fijado en los casos de Rabell, Vallecillo y Colón, *supra,* es que tratándose como se trata de un precepto restrictivo del derecho de propiedad, su interpretación debe ser estricta. A la luz de ese criterio examinaremos los hechos del caso. Se ha dado diferentes nombres a la construcción de que se trata, pero parece que las partes y el juez coinciden finalmente, sin previo acuerdo, en uno: Terraza.

El diccionario de la Academia dice que terraza es "una jarra vidriada de dos asas" y hace referencia a *terrado* que, según la misma autoridad significa "sitio de una casa, descubierto y elevado, desde el cual se puede explayar la vista."

No hay duda alguna a juzgar por la fotografía presentada como prueba, por la inspección ocular y por las declaraciones de las partes que el demandado trató de construir y construyó primeramente una amplia y bella terraza en el costado de su casa que da a la finca de los demandantes. Tiene dos plantas. La verdadera terraza la constituye la segunda planta. La primera era necesaria para obtener la elevación que se pretendía y se construyó de tal modo que favorece la seguridad de la entrada interior de la casa que en vez de dar a un sitio abierto da a un sitio protegido contra el sol y la lluvia.

La ley sólo habla de ventanas, balcones y otros voladizos semejantes. Una terraza no es una ventana corriente. ¿Puede considerarse como un balcón o como un voladizo semejante a un balcón?

Balcón, dice la Academia en su Diccionario, es una "ventana grande, abierta desde el suelo de la habitación, con barandilla, por lo común, saliente," y voladizo es aquello que "vuela o sale de lo maciso en las paredes o edificios."

Habiendo en consideración las anteriores definiciones y la realidad de los hechos, no obstante la interpretación restrictiva que debe darse a la ley, es necesario concluir que una terraza es a manera de un amplio balcón dedicado a dar expansión a los hogares, donde usualmente se reúnen las familias y sus visitas de confianza, donde se celebran fiestas y desde donde la vista pueda explayarse y recibirse más libremente la acción de la luz y del aire que en el interior de la casa. Generalmente se cubren de enredaderas. Es, pues, un voladizo semejante a un balcón, sin que sea obstáculo para calificarlo de tal, el hecho de que se haya construído otra pared o columna para sostenerlo. Muchas veces los mismos balcones cuando son anchos y se teme que sufra la pared de que salen, se sostienen por columnas inferiores, y no por ello dejan de ser y de llamarse balcones.

La misma parte demandada comprendió que no podía conservar su terraza enteramente como tal, esto es, abierta al lado que da al solar de los demandantes, y sobre la pared de cemento levantó otra de madera dejando los huecos que se describen en la inspección. Parece que quiso colocarse dentro de la regla establecida en el caso de Vallecillo, *supra.*

¿Se colocó? No, a nuestro juicio. En el caso de Vallecillo se construyó una pared de cemento armado independiente, alta, en la línea divisoria de los solares, y esta corte dijo: hecho esto, nada importa lo que el dueño del solar haga en el interior del mismo. Aquí se elevó la pared pero en ella se dejaron ciertos huecos cuya naturaleza es necesario investigar.

La terraza como tal, esto es, considerada como balcón o

voladizo semejante, hemos visto que no pudo construirse como se construyó no sólo más allá del límite de los dos metros fijados por la ley, sino extendiéndose hasta llegar a la misma colindancia.

Si se estimara que a virtud de haberse elevado el muro de la colindancia, la terraza dejó de serlo en cuanto a los demandantes, entonces surge la siguiente cuestión: ¿pueden o no calificarse como ventanas los huecos que existen así en la planta baja como en la alta de la construcción?

*Ventana* como dice la academia es la "abertura más o menos elevada sobre el suelo que se deja en una pared para dar luz y ventilación." También se llama ventana "a la hoja u hojas de madera con que se cierra."

Por más que hay que reconocer que no se trata de ventanas comunes con sus hojas de abrir y cerrar, no es posible dejar de concluir que ventanas son por donde entran la luz y el aire las que existen en las dos plantas de la construcción de que se trata en este caso.

¿Tienen dichas ventanas vistas rectas? Para contestar la pregunta debidamente es necesario fijar primero lo que por vistas rectas se entiende.

Dice Manresa en sus Comentarios tantas veces citados por esta corte:

"Vistas *rectas*—o de frente—son aquellas que se abren en pared paralela a la línea que divide los predios, o en que el hombre tiene al usarlas la cabeza en su posición natural: en ellas mira aquél perpendicularmente sobre la línea divisoria entre la pared y el fundo del vecino. Vistas *oblicuas*—o de costado, laterales—, son aquellas que se practican en una pared que forma ángulo con la línea divisoria de los predios: para usarlas, el hombre tiene que colocar su cabeza hacia uno de los lados. Si lo construído fuese un balcón u otra obra saliente, al lado formará una vista recta sobre el fundo vecino. 4 Manresa Comentarios al Código, .765."

Y Scaevola, expresa, ilustrando su opinión con dos figuras, lo que sigue:

"Denominan los autores de Arquitectura legal 'vistas rectas (fi-

gura 8a.) aquellas en que el rompimiento que las constituye está hecho en una pared paralela a la línea divisoria que divide los predios, y 'vistas oblicuas' (figura 9a.) aquellas en que el muro en que están practicadas forma ángulo con dicha línea; en las primeras no es necesario volver la cabeza para mirar al fundo inmediato, y en las segundas sí.'' 10 Scaevola, Código Civil, 494.

Basándose en ciertas observaciones hechas constar por el juez sentenciador en el acta de inspección, sostiene el apelante que no se trata de vistas rectas en este caso, porque es necesario alzar la cabeza para mirar por los huecos. La opinión de Manresa ofrece algunas dudas en tal sentido cuando se examina ligeramente, mas no cuando se penetra en ella con mayor detención.   La de Scaevola no favorece la contención del apelante, y está en contra de ella el mismo Código Civil al prescribir en su artículo 590 que ''las distancias de que habla el artículo anterior (589) se contarán en las vistas rectas desde la línea exterior de la pared en los huecos en que no haya voladizos, desde la línea de éstos donde los haya.''

Parece conveniente transcribir el siguiente párrafo del alegato de la parte apelada impugnando dicha contención. Es así:

''Esta teoría es insostenible.   Basta que, cualquiera que fuere, o que sea, la distancia a que se coloque una persona, mire hacia la pared donde se abren los huecos y mire de frente a esa pared, aunque tenga que elevar su cabeza hacia arriba ·o descenderla hacia abajo; si la línea visual es perpendicular sobre la línea divisoria de ambas propiedades, la vista es recta, cualquiera que sea la posición de los huecos en relación con la cabeza del observador.   Línea visual perpendicular no quiere decir línea que forme ángulo recto al encontrarse con la línea divisoria de las propiedades: puede formar ángulo agudo, o puede formar ángulo obtuso, y siempre es una línea perpendicular, al encontrarse y seccionar, idealmente, la línea divisoria de los predios.   Además, cuando Manresa ha dicho que la cabeza se mantenga en su posición natural, no se ha referido al hecho de que pueda ser inclinada hacia arriba o hacia abajo para obtener el miraje, sino que no tenga que realizarse lo que forzosamente tiene que realizarse cuando se obtienen vistas oblicuas, esto

es, ladear la cabeza, virar la cabeza hacia un lado u otro para poder obtener ·vistas del fundo vecino.''

Caen, pues, también los huecos como ventanas que son con vistas rectas, dentro de la prohibición del artículo 589 del Código Civil, ya que la pared en que están abiertos es paralela a la línea divisoria de las fincas y al usarlos se tiene la cabeza en su posición natural y sê mira perpendicularmente sobre la línea divisoria entre la pared y el fundo del vecino.

Ahora bien, no está enteramente prohibido recibir luz y aire en un caso como el del demandado. Sujeto al derecho del dueño de la finca contigua a cubrirlo edificando en su terreno o levantando una pared contigua a la que tenga ''dicho hueco o ventana'', el dueño de una pared no medianera, contigua a finca ajena, puede abrir en ella ''ventana o huecos'' para recibir luces a la altura de las carreras, o inmediatos a los techos, y de las dimensiones de 30 centímetros en cuadro, y en todo caso, con reja de hierro remetido en la pared y con red de alambre. Artículo 588 del Código Civil revisado.

Eso es todo el derecho que tiene el demandado en este caso, considerada la construcción como él mismo la describió y calificó en el hecho quinto de su contestación, a saber:

''Que el demandado construyó en su citado solar no un voladizo, sino una estructura con soportes o columnas de cemento armado, *que es y forma parte del cuerpo de la casa principal*, . . .'' Las itálicas son nuestras.

Se observa en la sentencia que se ordena totalmente el cierre de los huecos o ventanas de la planta baja. En ello es errónea. Procede para la planta baja el mismo pronunciamiento que el que se dictó para la planta alta, de acuerdo con la jurisprudencia sentada en el caso de *García* v. *García, supra,* así:

''Se denominan carreras los maderos u otros materiales horizontales que se ponen sobre las zapatas de los pies derechos, o sea lo

que vulgarmente se llama vigas, destinadas a servir de enlace y sostén principal a los distintos cruzamientos que separan los pisos de los edificios. Y entiéndese por techo no sólo el último expuesto a la acción directa de los elementos, si que también la parte interior que recubre las habitaciones, existiendo en tal virtud varios techos en los edificios que tienen varios pisos y por consiguiente tantas carreras como techos.'' *García* v. *García,* 25 D.P.R. 128.

[2] El error relativo a la falta de jurisdicción de la corte de distrito carece de mérito, a nuestro juicio. En primer lugar parece que este pleito, por su propia naturaleza, corresponde a la corte de distrito que es la corte de jurisdicción general. Es dudoso si puede tasarse cumplidamente la cuantía en un caso como éste. Pero de todos modos habiéndose probado como se probó que la finca de los demandantes fué adquirida por quince mil dólares, y que es la libertad de dicha finca en relación con la servidumbre de luces y vistas de que se trata, la que es materia de discusión en el pleito, no hay duda alguna de la jurisdicción de la corte de distrito. Aún aplicando la regla citada por la parte apelante, o sea la No. 11 del Arancel de los Registradores de la Propiedad, Leyes de 1917, vol. II, pág. 317, la jurisdicción resultaría clara. El cinco por ciento de $15,000 es $750 y la cuantía de que pueden conocer las cortes municipales es $500.

[3] Tampoco es sostenible el tercero y último error.

El precepto de que se trata rige en Puerto Rico desde hace cerca de cuarenta años y preceptos de igual naturaleza en vigor están aquí desde hace siglos.

El Pueblo por medio de su rama legislativa tiene el poder de determinar en general los medios de adquirir y disfrutar el dominio de los bienes inmuebles y el de fijar la extensión de ese derecho. Y así lo hizo en este caso. Cuando la propiedad se adquiere, lo es sujeta a las reglas fijadas en la ley. El artículo 589 no impide al propietario fabricar hasta el límite de su finca. Le reconoce el señorío sobre toda ella, pero si el propietario quiere fabricar permanentemente con vistas rectas sólo puede hacerlo a dos

metros de distancia de la línea de su solar, concediéndosele en justa recompensa el derecho a exigir que su vecino haga lo mismo. La materia de servidumbre ha sido campo de acción para el legislador desde los más remotos tiempos. Actuó, pues, aquí el legislador no en campo vedado sino propio, y su actuación no es de tal modo arbitraria que pueda considerarse que viola derecho alguno garantizado por la constitución.

Dado el exceso de trabajo que pesa sobre esta corte, no entraremos en un estudio más minucioso de esta cuestión. La falta de razón es aparente. El caso del *Municipio de Ponce* v. *Vendrell*, 28 D.P.R. 329, que cita el apelante se refiere a una situación de derecho enteramente distinta y es por tanto inaplicable.

*Debe modificarse la sentencia apelada en la forma que se ha indicado y así modificada confirmarse.*

El Juez Asociado Señor Hutchison no intervino.