EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Carmen María Peña Rivera | Certiorari |
|---|---|
| Peticionaria | |
| v. | 2024 TSPR 48 |
| Fioldaliza Pacheco Caraballo | 213 DPR ___ |
| Recurrida | |

Número del Caso: CC-2023-0638

Fecha: 13 de mayo de 2024

Tribunal de Apelaciones:

    Panel Especial

Abogado de la parte peticionaria:

    Lcdo. Ramiro Rodríguez Ramos

Abogada de la parte recurrida:

    Lcda. Mayra Y. Vicil Bernier

Materia: Derechos Reales – Servidumbre de luces y vistas; aplicación del Art. 518 del Código Civil de 1930.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen María Peña Rivera

    Peticionaria

      v.                       CC-2023-0638      *Certiorari*

Fioldaliza Pacheco Caraballo

    Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 13 de mayo de 2024.

En el presente caso nos corresponde determinar si cierta evidencia presentada en el transcurso de este litigio fue suficiente para probar la ausencia de una servidumbre de luces y vistas sobre un inmueble en beneficio de otro perteneciente a distinto dueño.

Adelantamos que, tras un ponderado y cuidadoso análisis del expediente ante nuestra consideración, así como de las disposiciones legales y jurisprudenciales aplicables, hemos llegado a la conclusión de que, en efecto, en el presente caso, no existe tal servidumbre, por lo que correspondía ordenar el cierre o remoción de determinadas ventanas y balcones contrarias a ella construidas en el inmueble en cuestión. Veamos.

I.

El 24 de octubre de 2019 la Sra. Carmen Peña Rivera (en adelante, "señora Peña Rivera") presentó, ante el Tribunal de Primera Instancia, una *Demanda* en contra de la Sra. Fioldaliza Pacheco Caraballo (en adelante, "señora Pacheco Caraballo"). En el referido escrito, la señora Peña Rivera, quien es dueña de una propiedad sita en el solar #52 de la comunidad Villa Pesquera, en el Municipio de Patillas, Puerto Rico, solicitaba la eliminación de ciertos balcones y ventanas ubicados en una propiedad colindante a la suya por, presuntamente, éstos estar a menos de metro y medio de su propiedad, según es prohibido por ley. En particular, por el Artículo 518 del Código Civil de 1930, *infra*, que regula lo relacionado a la servidumbre de luces y vistas.[1]

Enterada de la demanda presentada en su contra, el 9 de enero de 2020 la señora Pacheco Caraballo compareció al foro primario mediante su *Contestación a demanda*. En ésta, negó las alegaciones que se realizaron en su contra y levantó varias defensas afirmativas, entre la que se encontraba que la controversia en cuestión era cosa juzgada, toda vez que

---

[1] En particular, el Artículo 518 del Código Civil de 1930, *infra*, establece lo siguiente:

> **No se puede abrir ventanas con vistas rectas, ni balcones u otros voladizos semejantes, sobre la finca del vecino si no hay un metro y medio de distancia entre la pared en que se construyan y dicha propiedad.**
>
> Tampoco pueden tenerse vistas de costado u oblicuas sobre la misma propiedad, si no hay sesenta (60) centímetros de distancia. (Énfasis nuestro). 31 LPRA sec. 1773 (Supl. 2015).

la construcción había sido realizada con la aprobación de las agencias gubernamentales concernientes.

Así las cosas, y luego de varios incidentes procesales no necesarios aquí pormenorizar, el 7 de febrero de 2022 la señora Peña Rivera presentó una *Solicitud de sentencia sumaria*. En síntesis, expresó que era un hecho incontrovertido que los balcones ubicados en la propiedad perteneciente a la señora Pacheco Caraballo se encontraban a 23.5 pulgadas (0.60 metros) de su propiedad, y las ventanas se encontraban a una distancia de 27.5 pulgadas (0.70 metros), ello en violación al Artículo 518 del Código Civil de 1930, *infra*. Para sustentar dichas alegaciones, la señora Peña Rivera incluyó un *Informe pericial* realizado por el Agrimensor Ismael Carrasquillo, en el cual se hacía constar mediante una fotografía que los balcones y ventanas a los que se ha hecho referencia se encontraban en vista recta a la residencia de la señora Peña Rivera.

Recibido el referido documento, el 28 de febrero de 2022 la señora Pacheco Caraballo compareció ante el Tribunal de Primera Instancia mediante *Oposición a sentencia sumaria*. En síntesis, en su escrito, ésta se opuso a lo solicitado por la señora Peña Rivera por entender que no se había presentado evidencia suficiente para probar una violación a la restricción que se establece en el Artículo 518 del Código Civil de 1930, *infra,* sobre la servidumbre de luces y vistas aquí en controversia.

Tras evaluar los escritos presentados por ambas partes, el 23 de marzo de 2022 el Tribunal de Primera Instancia emitió una *Sentencia parcial*. En ésta, ordenó a la señora Pacheco Caraballo eliminar los balcones y las ventanas que estuvieran a menos de cinco (5) pies de la propiedad de la señora Peña Rivera, lo anterior por estos estar en violación a lo dispuesto en el Artículo 518 del Código Civil de 1930, *infra*. Además, le impuso a la primera, en favor de la segunda, el pago de cuatro mil dólares ($4,000.00) en concepto de honorarios por temeridad.

Inconforme con lo sentenciado por el foro primario, el 11 de mayo de 2022 la señora Pacheco Caraballo presentó ante el Tribunal de Apelaciones un recurso de apelación. En síntesis, en su solicitud de revisión judicial ésta arguyó que el foro primario había errado al concluir que en el presente caso no existían controversias de hechos, razón por la cual se podía disponer del mismo sumariamente.

Por su parte, y en oposición, el 8 de junio de 2022 la señora Peña Rivera compareció ante el foro apelativo intermedio. En esencia, en su escrito, ésta se opuso a la apelación presentada por la señora Pacheco Rivera por entender que la determinación del Tribunal de Primera Instancia fue una correcta en derecho.

Examinados los alegatos de ambas partes, el 27 de junio de 2022 el Tribunal de Apelaciones emitió una *Sentencia*. Al así hacerlo, revocó la determinación emitida por el foro primario al entender que en la causa de marras no se había

presentado evidencia suficiente para demostrar que los balcones y ventanas objeto del presente litigio debían considerarse vistas rectas u oblicuas con relación a la residencia de la señora Peña Rivera, como lo exige el Artículo 518 del Código Civil de 1930, *infra*.

En cumplimiento con lo ordenado, el 27 de marzo de 2023 el Tribunal de Primera Instancia celebró el juicio en su fondo. En éste, se presentaron como evidencia diversas imágenes de las propiedades,[2] así como el testimonio de la señora Peña Rivera y del Sr. John Suárez Méndez (en adelante, "señor Suárez Méndez"), constructor acogido como perito por el tribunal.[3]

Evaluada la prueba testifical y documental presentada por las partes en el juicio en su fondo, el 23 de mayo de

---

[2] Véase, Apéndices I al III de esta *Opinión*.

[3] **Según surge de la transcripción del Juicio en su fondo, el señor Suárez Méndez, testigo perito, expresó en Sala que la residencia número #52 se encuentra a mano derecha de la imagen, la #53 a mano izquierda y se encuentran divididas por una verja. Véase, Apéndice del *certiorari*, págs. 73 a la 74. Además, y en extremo pertinente a nuestra controversia, el señor Suárez Méndez testificó que desde el balcón de la residencia #53 a la verja entre las propiedades existe una distancia de 23.5 pulgadas. En cuanto a la distancia de la ventana a la verja, éste expresó que la distancia era de 27.5 pulgadas. Ambas distancias fueron medidas en línea recta hacia la verja que divide las dos colindancias. Véase, Apéndice del *certiorari*, págs. 80-81.**

**Lo declarado por el señor Suárez Méndez coincide con las fotografías que fueron marcadas como *Exhibit* I y II por Estipulación, y *Exhibit* 1 y *Exhibit* 2 de la Parte Demandante, las cuales muestran las propiedades, así como un muro que hay entre medio de éstas. En particular, puede apreciarse que la propiedad de la señora Pacheco Caraballo tiene unas ventanas en el primer piso y un balcón voladizo en el segundo piso, ambos con vistas rectas sobre la propiedad de la señora Peña Rivera. Además, estas fotografías muestran al señor Suárez Méndez midiendo con una cinta métrica la distancia entre las ventanas y el balcón con relación a un muro que está entre medio de las propiedades. Véase, Apéndices I al III de esta *Opinión*.**

2023 el foro primario emitió una *Sentencia* mediante la cual desestimó el recurso ante su consideración. Esto, debido a que, en esta ocasión, a juicio del Tribunal de Primera Instancia, la señora Peña Rivera no pudo probar sus alegaciones, según presentados en su *Demanda*. Particularmente, que esta última no pudo establecer en su caso si se trataban de vistas rectas o vistas oblicuas, según lo contempla el Artículo 518 del Código Civil de 1930, *infra*, y que no se establecieron los linderos entre las propiedades para tomar las medidas, aún existiendo una pared que divide las residencias en controversia que podría presumirse como medianera.

En desacuerdo con el proceder del foro primario, el 16 de junio de 2023 la señora Peña Rivera compareció ante el Tribunal de Apelaciones mediante un recurso de apelación. En particular, ésta solicitó la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, por entender que ella logró probar todas y cada una de sus alegaciones ante el foro primario.

Tras analizar los alegatos de ambas partes, el 31 de agosto de 2023 el foro apelativo intermedio notificó una *Sentencia* mediante la cual confirmó el dictamen emitido por el foro primario. Ello, por entender que no debía intervenir con la determinación emitida por el Tribunal de Primera Instancia. Además, concluyó que establecer los puntos de colindancia era esencial para poder obtener medidas confiables y poder probar su caso.

Insatisfecha con el dictamen del foro apelativo intermedio, el 2 de octubre de 2023 la señora Peña Rivera compareció ante nos mediante recurso de *Certiorari*. En éste, y en síntesis, nos solicita que revoquemos las determinaciones de los foros *a quo* y le ordenemos a la señora Pacheco Caraballo eliminar los balcones y ventanas que ubiquen a menos de un metro y medio de su propiedad, ello por estos ser construidos en violación a lo dispuesto en el Artículo 518 del Código Civil de 1930, *infra*.

A dicha solicitud, oportunamente, la señora Pacheco Caraballo se opuso. En esencia, ésta sostiene que no se presentó evidencia suficiente sobre si las ventanas y balcones en controversia debían de considerarse como vistas rectas o vistas oblicuas, según se establece en el Artículo 518 del Código Civil de 1930, *infra*. De igual forma, arguyó que tampoco se presentó evidencia sobre los linderos de las propiedades para poder realizar las correspondientes medidas.

Trabada así la controversia, luego de haber expedido el presente recurso y con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa que gobierna los asuntos ante nuestra consideración.

II.

A.

Como es sabido, "[e]l derecho a la intimidad y a la dignidad del ser humano ocupan el sitial de mayor jerarquía entre los valores más transcendentales reconocidos por [la

Constitución del Estado Libre Asociado de Puerto Rico]". *Indulac v. Cent. Gen. de Trabajadores*, 207 DPR 279, 303 (2021). Y es que, a diferencia de la Constitución federal, nuestra Constitución lo reconoce expresamente. *El Vocero de P.R. v. E.L.A.*, 131 DPR 356, 428 (1992); *Arroyo v. Rattan Specialties*, Inc., 117 DPR 35, 75 (1986); *Figueroa Ferrer v. E.L.A.*, 107 DPR 250, 258 (1978).  En específico, la protección constitucional de estos derechos está plasmada en el Artículo II, Secciones 1 y 8, de nuestra Carta Magna. Art. II, Secs. 1 y 8, Const. ELA, LPRA, Tomo 1.

De igual forma, hemos sido enfáticos en que el derecho a la intimidad del ser humano es uno que opera *ex proprio vigore*. Art. II, Sec. 8, Const. ELA, LPRA, Tomo 1. Véase, *Indulac v. Unión*, *supra*, pág. 303; *Siaca v. Bahía Beach Resort*, 194 DPR 559, 582-583 (2016). Por lo antes expresado, es norma firmemente establecida que "no se requiere legislación para exigir su cumplimiento". *Indulac v. Unión*, *supra*, pág. 302. Véase, *P.R. Tel. Co. v. Martínez*, 114 DPR 328 (1983).

En fin, el derecho a la intimidad es un derecho fundamental, que "goza de la más alta protección bajo nuestra Constitución y constituye un ámbito exento capaz de impedir o limitar la intervención de terceros —sean particulares o poderes públicos— contra la voluntad del titular". *López Tristani v. Maldonado*, 168 DPR 838, 849 (2006). Sin embargo, a pesar de considerarse un derecho de alta jerarquía, no es de carácter absoluto, ni vence a todo valor en conflicto bajo

todo supuesto posible. (Cita depurada). *Indulac v. Unión*, *supra*, pág. 303; *Vega et al. v. Telefónica*, 156 DPR 584, 602 (2002); *E.L.A. v. P.R. Tel. Co.*, 114 DPR 394, 401 (1983).

### B.

Dicho ello, conviene mencionar aquí también que la Constitución del Estado Libre Asociado de Puerto Rico reconoce, de igual forma, el derecho fundamental al disfrute de la propiedad. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. En cuanto a este derecho de rango constitucional, esta Curia ha establecido que, "junto al derecho a la vida y a la libertad, es uno de los cimientos de nuestra convivencia social democrática". *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 785 (2023). Véase, *Culebra Enterprises Corp. v. E.L.A.*, 127 DPR 943, 952 (1991).

Respecto al derecho a la propiedad, y al igual que sucede con el derecho a la intimidad, hemos sentenciado que éste no es uno absoluto. *SLG Ortiz-Mateo v. ELA*, *supra*, pág. 785; *Adm. Terrenos v. Ponce Bayland,* 207 DPR 586, 603 (2021); *Mun. de Guaynabo v. Adquisición M2*, 180 DPR 206, 216 (2010). Esto, debido a que el mismo está sujeto al poder inherente del Estado de establecer restricciones sobre la propiedad de los ciudadanos. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409 (2008); *Culebra Enterprises Corp. v. E.L.A.*, *supra*; *E.L.A. v. Registrador*, 111 DPR 117 (1981).

### C.

En esa dirección, y entre las restricciones que el Estado puede establecer en propiedades privadas, se

encuentran lo que se conocen como las servidumbres. El Código Civil de 1930, vigente al momento en que se presentó la causa de epígrafe, en su Artículo 465, *infra*, define las servidumbres como "un gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño". 31 LPRA sec. 1631 (Supl. 2015). El inmueble a cuyo favor está constituida la servidumbre se llama predio dominante; el que la sufre, predio sirviente. *Íd*.

Sobre las particularidades de esta figura jurídica, el profesor Michael J. Godreau, en su artículo titulado *Servidumbres y conservación,* citando al tratadista Castán Tobeñas, nos señala que:

Para Castán, las características generales del derecho de servidumbre son:

(1) *Es un derecho real* y como derecho real recae sobre la cosa misma. Otorga a su titular, en virtud de la facultad de persecución inherente a los derechos reales, la posibilidad de ejercer una acción real denominada acción confesoria que conlleva el reconocimiento de su derecho ante aquéllos que lo desconocen, aunque se trate del propietario de la finca. Posee como todo derecho real la facultad de realización directa, es decir, de utilización, goce y disfrute de la cosa. Confiere también a su titular la facultad de exclusión que le permite reclamar que se ponga fin a una amenaza a su derecho o a una perturbación ya realizada.

(2) *Recae sobre cosa ajena,* específicamente sobre inmueble ajeno. Es imposible una servidumbre sobre cosa propia pues los derechos que tiene un dueño en su fundo los tiene en virtud del derecho de propiedad y no por la servidumbre. Es indispensable que el

titular del feudo sirviente y el titular del derecho de servidumbre sean personas distintas. El Código provee para la extinción del derecho de servidumbre si llegan a reunirse en un mismo titular las cualidades de propietario de la cosa y de titular de la servidumbre.

(3) *Es una limitación al derecho de propiedad* en beneficio de otro, ya sea otra finca o una persona o comunidad particular. Por ser limitaciones al derecho de propiedad han de tener un contenido específico y representar alguna utilidad para una finca o una persona o comunidad, pues no procede reconocer limitaciones al derecho de propiedad que no representen una ventaja para alguien. No es necesario que el beneficio sea grande, basta que se dé una utilidad o ventaja cualquiera. Tampoco es necesario que el derecho que concede la servidumbre se ejercite, es suficiente que pueda ejercitarse. Su contenido ha de ser específico ya que aunque su función es restringir algún aspecto del dominio, nunca ha de pretender suplantarlo. **Por ser un gravamen o limitación su interpretación ha de ser siempre restrictiva a favor del predio sirviente**. Como carga o gravamen otorga al titular que soporta la limitación la posibilidad de ejercer una acción negatoria que niegue el derecho de servidumbre e impida su ejercicio. (Énfasis nuestro). M. Godreau y A. García Saul, *Servidumbres y conservación*, 67 Rev. Jur. UPR 249, 254-255 (1998).

De otra parte, y en lo relacionado a su constitución, el Artículo 472 del mencionado Código Civil de 1930, *infra*, dispone que "[l]as servidumbres se establecen por la ley o por la voluntad de los propietarios. Aquéllas se llaman legales y éstas voluntarias". 31 LPRA sec. 1638 (Supl. 2015). En cuanto a las servidumbres legales, el Artículo 485, *infra*,

indica que éstas "tienen por objeto la utilidad pública o el interés de los particulares". 31 LPRA sec. 1701 (Supl. 2015).

**Un ejemplo de lo que se considera una servidumbre legal es la servidumbre de luces y vistas, la cual se encuentra codificada en los Artículos 516 al 521 del Código Civil de 1930. 31 LPRA ant. secs. 1771-1776. Sobre la antes mencionada servidumbre, hemos establecido que es una continua, aparente y negativa cuando se realiza sobre pared propia, y que puede adquirirse mediante título o por prescripción de veinte años.** *Ríos v. Mercado*, 73 DPR 840, 846 (1952); *Balzac v. Torres*, 68 DPR 983, 989 (1948); *Iglesia Católica, etc. v. Combate Tobacco Corp.*, 42 DPR 376 (1931). Véanse, Arts. 468 y 473 del Código Civil de 1930, 31 LPRA ant. secs. 1634 y 1651.

En este último caso, entiéndase, la adquisición de un derecho de servidumbre de luces y vistas por prescripción, el período prescriptivo empieza a contar con el acto obstativo. *Balzac v. Torres*, *supra*, pág. 989; *Ramos v. Viejo*, 66 DPR 642 (1946); *Díaz v. Pérez*, 56 DPR 727 (1940). Es decir, comienza a partir del día en que el dueño del predio dominante prohíbe por un acto formal al del predio sirviente la ejecución del hecho que sería lícito sin la servidumbre. *Balzac v. Torres*, *supra*, pág. 989; *Ramos v. Viejo*, *supra*; *Díaz v. Pérez*, *supra*.

Así pues, -- y por su importancia para la correcta disposición de los asuntos ante nuestra consideración --, precisa señalar aquí que, "[l]a servidumbre de luces y vistas no se adquiere por el hecho de abrirse las ventanas de una

pared de cierta casa de modo que invadan el espacio y se proyecten hacia el terreno de otra finca, [sumándole a ello el paso] del término prescriptivo". *Delgado Cruz v. Girau Bernal*, 115 DPR 61, 66 (1984). Tal invasión al terreno no constituye el acto obstativo requerido por ley, sino un acto de mera tolerancia. *Delgado Cruz v. Girau Bernal*, *supra*, pág. 66; *Figueroa v. Guerra*, 69 DPR 607, 613 (1949). Véase, J. M. Manresa, *Comentarios al Código Civil Español*, Madrid, Ed. Reus, 1972, T. IV, págs. 969-970.

### D.

Establecido lo anterior, -- donde queda claro el reconocimiento en nuestra jurisdicción de la figura de la servidumbre de luces y vista --, nos corresponde entonces evaluar cómo ésta opera. Al respecto, el Artículo 518 del Código Civil de 1930, *infra*, establece lo siguiente:

> **No se puede abrir ventanas con vistas rectas, ni balcones u otros voladizos semejantes, sobre la finca del vecino si no hay un metro y medio de distancia entre la pared en que se construyan y dicha propiedad.**
>
> Tampoco pueden tenerse vistas de costado u oblicuas sobre la misma propiedad, si no hay sesenta (60) centímetros de distancia. (Énfasis nuestro). 31 LPRA sec. 1773 (Supl. 2015).[4]

**Al interpretar el alcance del precitado articulado, este Tribunal ha sentenciado que, para fines del cómputo del metro y medio que se dispone en el mismo "[n]o es la distancia**

---

[4] Si bien el Artículo 518 del Código Civil de 1930, *supra*, establecía que la distancia mínima para abrir ventanas y balcones en vista recta era de dos metros, la Ley Núm. 90 de 16 de junio de 1953 (1953 Leyes de Puerto Rico 315) enmendó la distancia requerida a un metro y medio.

entre los edificios [lo importante] sino [más bien, que exista metro y medio] entre la pared en que se construyan los huecos y la colindancia de la propiedad contigua, pues el objeto es evitar la inspección de la finca del colindante a menos [del metro y medio fijado] por el código". (Énfasis nuestro). C*ordero Carrete v. Lastra Charriez*, 39 DPR 617 (1929).

En ese sentido, y en cuanto a la manera de realizar las medidas de las distancias a las que hemos hecho referencia, el Artículo 519 establece que éstas "se contarán en las vistas rectas desde la línea exterior de la pared en los huecos en que no haya voladizos, desde la línea de éstos donde los haya, y para las oblicuas desde la línea de separación de las dos propiedades". (Énfasis nuestro). 31 LPRA sec. 1774 (Supl. 2015).

E.

Pero, ¿a qué se refieren los Artículos 518 y 519 del Código Civil de 1930, *supra*, cuando nos habla de vistas rectas y vistas oblicuas? Explicamos.

Son vistas rectas "aquellas que se abren en pared paralela a la línea que divide los predios, o en que el hombre tiene[,] al usarlas[,] la cabeza en su posición natural: en ellas mira aquél perpendicularmente sobre la línea divisoria entre la pared y el fundo del vecino". *Arabia de Goico v. Armstrong*, 37 DPR 170 (1927). De otra parte, son vistas oblicuas "aquellas que se practican en una pared que forma ángulo con la línea divisoria de los predios: para

usarlas, [la persona] tiene que colocar su cabeza hacia uno de los lados". *Arabia de Goico v. Armstrong*, *supra*.

Elaborando sobre lo antes dicho, en *Delgado v. Rodríguez*, *infra*, sentenciamos que,

> [las] ventanas necesariamente tienen vistas rectas, o de frente, [...] [cuando] el hombre, al usarlas, tiene la cabeza en su posición natural, de frente, en distinción de las vistas oblicuas, también llamadas de costado o laterales, en que por estar abiertas las ventanas en ángulo con la línea divisoria de las propiedades, el hombre para usarlas, tiene que volver la cabeza hacia uno de los lados. Tampoco dejan de tener vistas rectas las persianas muertas o fijas, por el hecho de que para ver el inmueble de la demandante sea necesario mirar hacia abajo o hacia arriba. Ése no es el concepto de las vistas rectas. De otro modo, el dueño de una casa de más de una planta contigua a una más baja, podría abrir ventanas en pared paralela a la del colindante, a menos de [metro y medio[5]] de distancia de la línea divisoria, siempre que dichas ventanas estuvieren más altas que la propiedad del colindante. (Énfasis nuestro). *Delgado v. Rodríguez*, 71 DPR 445, 449-450 (1950). Véase, Manresa, *Comentario al Código Civil Español* (3ra. ed. 1910) t. 4, pág. 777.

### III.

De otra parte, en torno al tema de la medianería, --también presente en la causa de epígrafe, por tratarse de uno de los puntos desde donde parte la medida de metro y medio que regula el Artículo 518 del Código Civil de 1930, *supra* --, es necesario evaluar las presunciones que establece el Artículo 508 del Código Civil de 1930, *infra*. En particular, la referida disposición legal establece lo siguiente:

---

[5] Véase, nota al calce 4.

Se presume la servidumbre de medianería mientras no haya un título o signo exterior, o prueba en contrario:

1. En las paredes divisorias de los edificios contiguos hasta el punto común de elevación.

2. **En las paredes divisorias de los jardines o corrales sitos en poblado o en el campo.**

3. En las cercas, vallados y setos vivos que dividen los predios rústicos. (Énfasis nuestro). 31 LPRA sec. 1752 (Supl. 2015).

Ahora bien, "[e]stas presunciones son rebatibles, lo que implica que todo pleito relativo a las mismas puede requerir prueba del contenido de los títulos de las partes, si disponibles, y de factores particulares que impongan otras leyes y reglamentos de interés sobre la estructura en cuestión". L. Muñiz Argüelles, *Lecciones sobre derechos reales*, San Juan, 1.ª ed., 2023, pág. 301.

IV.

Por último, y habiendo elaborado en detalle sobre todo lo relacionado a las servidumbres de luces y vistas, y las restricciones establecidas a falta de ésta, solo nos resta mencionar que, en nuestro ordenamiento jurídico es norma firmemente establecida que, ante la ausencia de **error manifiesto**, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos en la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. *Ortiz Ortiz v. Medtronic*, 209 DPR 759,

778 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011). Sobre ello, en el pasado, hemos expresado que la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió en un caso depende en gran medida de la exposición del juez o la jueza a la prueba presentada; trabajo que, en esencia, se realiza en el foro primario. *Ortiz Ortiz v. Medtronic*, *supra,* pág. 778; *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 792 (2020); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). La llamada deferencia judicial está predicada, precisamente, en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo. *Ortiz Ortiz v. Medtronic*, *supra*, pág. 779; *Santiago Ortiz v. Real Legacy et al.*, *supra*, pág. 219. Véase, *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).

**Establecido lo anterior, y ya más en lo relacionado a lo que constituye un error manifiesto, este Tribunal ha sentenciado que el mismo está presente cuando el foro apelativo queda convencido de que existe un conflicto entre las conclusiones a las que llegó el Tribunal de Primera Instancia y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.** *Ortiz Ortiz v. Medtronic, supra*, pág. 779; *Dávila Nieves v. Meléndez Marín*, *supra*, pág. 772. Véase, *Méndez v. Morales*, 142 DPR 26, 36 (1996). **Es decir, cuando la apreciación de la prueba se**

**distancia de la realidad fáctica o es inherentemente imposible o increíble**. *Ortiz Ortiz v. Medtronic*, *supra*, pág. 779; *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018); *Pueblo v. Irizarry*, 156 DPR 780, 816 (2002). Tal es el caso de autos.

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de la controversia ante nos.

V.

En el presente caso, como mencionamos anteriormente, la señora Peña Rivera señala que el Tribunal de Apelaciones erró al confirmar la determinación del Tribunal de Primera Instancia que desestimó la causa de epígrafe por entender que no se presentó evidencia suficiente para probar una violación a la restricción que contempla el Artículo 518 del Código Civil de 1930, *supra*, por parte de su vecina colindante, la señora Pacheco Caraballo, al no existir una servidumbre de luces y vistas. Le asiste la razón a ésta.

Y es que, -- si bien le debemos deferencia a la apreciación de la prueba que, en lo relacionado al caso de marras, realizó el foro primario --, tras una detenida, desapasionada y cuidadosa lectura del expediente ante nuestra consideración, compuesto por alrededor de 200 folios, hemos llegado a la conclusión de que el Tribunal de Primera Instancia incurrió en error manifiesto. Ello, por existir un conflicto entre las conclusiones a las que llegó el foro primario y el balance más racional, justiciero y jurídico de la totalidad de la evidencia que tuvo a bien recibir.

En esa dirección, no albergamos duda alguna de que la prueba desfilada ante el Tribunal de Primera Instancia, -- en particular, aquella presentada mediante imágenes de las residencias, imágenes de las medidas tomadas desde la pared medianera[6] a la residencia de la señora Pacheco Caraballo y los testimonios de la señora Peña Rivera y, muy en particular del perito, el señor Suárez Méndez --, fue en extremo suficiente para establecer, de forma clara y convincente, que en la residencia de la cual la señora Pacheco Caraballo es dueña existen balcones y ventanas a menos de metro y medio de la colindancia.[7] Esto es en clara violación al derecho a la intimidad de la señora Peña Rivera y en violación al Artículo 518 del Código Civil de 1930, *supra.*

Más allá de realizar alegaciones generales, la señora Pacheco Caraballo no pudo rebatir la prueba desfilada en su contra. Erró al así hacerlo.

---

[6] Destacamos que en este caso la señora Peña Rivera estableció una presunción de servidumbre de medianería, según dispone en el Artículo 508 del Código Civil de 1930, *supra*, la cual nunca fue rebatida por la señora Pacheco Caraballo.

[7] **Reseñamos nuevamente que, según surge del testimonio del señor Suárez Méndez, testigo perito, desde el balcón de la residencia #53 a la verja entre las propiedades existe una distancia de 23.5 pulgadas. En cuanto a la distancia de la ventana a la verja, éste expresó que la distancia es de 27.5 pulgadas. Ambas distancias fueron medidas en línea recta hacia la verja que divide las dos colindancias. Véase, Apéndice del *certiorari*, págs. 80-81.**

**Lo declarado por el señor Suárez Méndez coincide con las fotografías que fueron marcadas como *Exhibit* I y II por Estipulación, y *Exhibit* 1 y *Exhibit* 2 de la Parte Demandante, las cuales muestran las propiedades, así como un muro que hay entre medio de éstas. En particular, puede apreciarse que la propiedad de la señora Pacheco Caraballo tiene unas ventanas en el primer piso y un balcón voladizo en el segundo piso, ambos con vistas rectas sobre la propiedad de la señora Peña Rivera. Véase, Apéndices I al IV de esta *Opinión*.**

Procede, pues, ordenar la eliminación de aquellas ventanas y balcones en la propiedad de la señora Pacheco Caraballo que incumplan con el Artículo 518 del Código Civil de 1930, *supra,* aquí bajo estudio. Los errores señalados fueron cometidos.

VI.

Por los fundamentos antes expuestos, se revoca la *Sentencia* del Tribunal de Apelaciones, que confirmó la *Sentencia* desestimatoria del Tribunal de Primera Instancia. En consecuencia, se devuelve el caso de autos al foro primario para la continuación de los procedimientos de forma compatible con lo aquí dispuesto.

Se dictará *Sentencia* de conformidad.


Ángel Colón Pérez
Juez Asociado

Apéndice I



---

8 Las marcas (flechas) en la imagen fueron suplidas con fines ilustrativos.

Apéndice II



Apéndice III



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen María Peña Rivera

    Peticionaria

        v.                      CC-2023-0638     *Certiorari*

Fioldaliza Pacheco Caraballo

    Recurrida

SENTENCIA

En San Juan, Puerto Rico a 13 de mayo de 2024.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la *Sentencia* del Tribunal de Apelaciones, que confirmó la *Sentencia* desestimatoria del Tribunal de Primera Instancia. En consecuencia, se devuelve el caso de autos al foro primario para la continuación de los procedimientos de forma compatible con lo aquí dispuesto.

    Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez no intervino.

                        Javier O. Sepúlveda Rodríguez
                        Secretario del Tribunal Supremo