Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| FÁTIMA SEDA BARLETTA<br><br>Apelante<br><br>v.<br><br>ROBERTO LEITH PÉREZ, TRIPLE S PROPIEDAD Y OTROS<br><br>Apelada | KLAN202400405 | Apelación Procedente del Tribunal de Primera Instancia, Sala de SAN JUAN<br><br>Caso Núm.: SJ2020CV03940<br><br>Sobre: Enriquecimiento injusto Daños y Perjuicios |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de octubre de 2024.

El 24 de abril de 2024, Fátima Seda Barletta (en adelante, la apelante) compareció ante nos mediante recurso de *Apelación* y nos solicitó que revisemos la *Sentencia* emitida en el caso de autos, el 31 de enero de 2024 por el Tribunal de Primera Instancia, Sala de San Juan (en adelante, TPI o foro primario).[1] Específicamente, nos pide que pasemos juicio sobre la negativa del TPI en incluir algunas de las determinaciones de hechos adicionales que pidió se añadieran. También, nos solicita que modifiquemos la cantidad que el foro primario concedió a su favor como indemnización, por encontrar que esta se aleja de la evidencia que se desfiló en el juicio y resulta muy baja.

Examinado el expediente, en virtud del derecho aplicable que más adelante consignaremos, **confirmamos** la *Sentencia* apelada. Veamos.

-I-

El pleito de epígrafe trata de una demanda por daños y perjuicios instada por la parte apelante contra el Sr. Roberto Leith Pérez (en adelante,

---

[1] Este dictamen fue notificado al día siguiente.

Número Identificador

SEN2024 _____

el apelado), su aseguradora Triple S Propiedad (en adelante, Triple-S) y otras personas de nombres desconocidos. En esta, se alegó que el apelado mantenía en el patio de su residencia un árbol de por lo menos 43 pies de alto y 12 de diámetro. Según allí se expuso, en la noche del 6 de septiembre de 2017 o en la madrugada del día siguiente, como consecuencia del paso por Puerto Rico del Huracán Irma, el árbol- al que se alegó el apelado no le daba mantenimiento- cayó sobre la propiedad de la parte apelante y causó graves daños a la propiedad por los que reclamó indemnización.[2]

Al contestar la demanda, el apelado aceptó ser dueño de la propiedad contigua a la de la apelante y admitió tener al momento de los hechos una póliza expedida por Triple-S. No obstante, negó la alegada falta de mantenimiento del árbol, los alegados daños y levantó un sinnúmero de defensas afirmativas. Luego de los trámites de rigor, el juicio fue celebrado los días 5 y 6 de octubre y el 2 y 8 de noviembre del año 2023. Durante el mismo, por la parte apelante prestó testimonio ella misma, el Sr. Héctor Balvarena Alfaro, el Sr. William León Figueroa y su perito, el Ing. Carlos García Sotelo.[3] El apelado presentó el testimonio de su perito, Emiliano Ruiz.

Recibida y aquilatada la prueba, el 1 de febrero de este año, el TPI emitió *Sentencia* en la que formuló 110 determinaciones de hechos. Basándose en estas, y al amparo del derecho aplicable allí consignado, el foro primario concluyó que la apelante advino dueña titular de la propiedad en cuestión 2 meses antes del paso del Huracán Irma y que para esa fecha no estaba operando como negocio de hospedería. Asimismo, ultimó que, conforme la prueba recibida estableció, el árbol caído era uno

---

[2] Así, se reclamó que se sufrieron daños en la estructura como grietas en el techo, desprendimiento de plafón de concreto en varios lugares, desprendimiento de losetas en varias áreas del segundo piso, descuadre de puertas y ventanas y el desprendimiento de la pared que colinda con la propiedad del señor Leith Pérez, la obstrucción de las cañerías, estimados en no menos de $50,000.00, más una pérdida de ingreso de $3,000.00 mensuales, al no poderse alquilar los apartamentos de la propiedad por los daños.

[3] Según surge del expediente, la parte apelante renunció, sin objeción del apelado, al testimonio del Sr. Luis Ginés Pérez.

de gran extensión en su tronco y ramas y de gran follaje, que las ramas eran extensas, invadían la propiedad de la demandante, que el apelado había alterado el tronco del árbol al construir una escalera y una casa de árbol en él, que sobre este asunto se presentó una querella y que previo al paso del evento atmosférico, se le había requerido al apelado la poda del árbol.

En virtud de la evidencia admitida, el TPI determinó que el apelado fue negligente al hacer caso omiso de los requerimientos de poda, al construir una escalera que debilitó el árbol, así como al permitir que sus ramas se extendieran demasiado hacia la propiedad colindante. Por ello, lo encontró responsable de los daños sufridos por la apelante. El foro primario reconoció la mayoría de las facturas que la apelante presentó durante el juicio y concedió en compensación, "por los gastos incurridos por la demandante para reparar los daños a la estructura", la suma de $7,862.82.

Aparte de esto, tras identificar el caso <u>Anqueira Pérez v. Pérez Rivera</u>, KLAN200900753 como punto de referencia, el TPI valoró las angustias mentales de la apelante en $1,500.00, al no albergar duda de que la apelante debía ser compensada, "por las angustias y vicisitudes vividas para limpiar su propiedad y arreglarla a consecuencia de los daños recibidos por el impacto de las ramas del árbol sembrado por el demandado y quien no le dio el mantenimiento adecuado."[4]

El 17 de febrero del año en curso, en desacuerdo con lo resuelto, la apelante sometió, *Moción Solicitando Reconsideración de Sentencia al Amparo de la Regla 47 de las de Procedimiento Civil de 2009, según enmendadas, y Determinación de Hechos y Derecho Adicionales Bajo la Regla 43 de las de Procedimiento Civil, según enmendadas.* Allí, primeramente, cuestionó el que no se dieran por admitidas las alegaciones de su demanda, cuando en virtud de la Regla 6.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.2, debió hacerse. En segundo lugar, disputó la admisibilidad del testimonio de

---

[4] Véase, pág. 49 del Apéndice.

Emiliano Ruiz Plá, puesto que este no tenía activa su licencia para ejercer como ingeniero y el informe pericial que presentó no tenía el sello requerido por la Ley. Por estas razones, lo clasificó como evidencia, "a todas luces inadmisible.". También impugnó la admisibilidad del testimonio de la ajustadora Claribel Marrero.

De otra parte, y en su cuestionamiento de la *Sentencia*, la apelante sostuvo que la parte demandada falló en controvertir las imágenes de las fotografías que sometió en evidencia. A su vez, pone entre dicho el que el tribunal emitiera juicio de los daños mediante evidencia constituyente de fotografías, sin haber celebrado una inspección ocular, la ausencia de daño alcanzada por el foro primario porque pudo vender la propiedad a un valor mayor al que se le había ofrecido para el año 2017 y ciertas determinaciones de hechos efectuadas por el foro primario. Por último, en su escrito la apelante solicitó que el TPI emitiera alrededor de 42 determinaciones de hechos adicionales, algunas con sub incisos. También, señaló que el ejercicio valorativo efectuado sobre sus daños fue incorrecto, pues no consideró que los daños que sufrió fueron sucesivos y continuados. Así reclama, ya que una vez ocurren los hechos, la propiedad comenzó a deteriorarse por motivo y causa de los actos y omisiones de la parte demandada.

El 6 de marzo de 2024, el apelado se opuso a la solicitud de reconsideración interpuesta por la apelante. Negó la procedencia del reclamo hecho al amparo de la Regla 6.2 de Procedimiento Civil, *supra;* así como el ataque y la impugnación levantada frente a las determinaciones de hechos formuladas y al ejercicio apreciativo y de valorización efectuado por el juzgador de hechos.

Evaluadas ambas posturas, el 26 de marzo del año en curso, el foro recurrido emitió *Resolución en Reconsideración*. Allí, enmendó su *Sentencia* a los efectos de que la determinación de hechos número 13, indique que la señora Fátima Seda Barletta residía en la propiedad al momento del paso

del Huracán Irma y aquella número 13 para que lea "en la parte de atrás tiene otra estructura de **dos** pisos y tiene 4 apartamentos". (Énfasis en el original) Según allí se indicó, se sustituyó la palabra dos en lugar de tres. Realizadas tales enmiendas, el TPI declaró No Ha Lugar la solicitud de reconsideración y determinaciones adicionales. Al así hacerlo, atendió individualmente los planteamientos levantados por la apelante. Disconforme aun, la apelante instó ante nos el recurso de *Apelación* de epígrafe en el que le imputó al foro primario equivocarse al:

> […] al declarar no ha lugar los restantes argumentos de reconsideración, solamente enmendando las determinaciones de hechos 10 y 13.
>
> […] al declarar no ha lugar las determinaciones de hechos adicionales.
>
> […] al concluir en derecho que la apelante Fátima Seda Barletta sólo merece la cantidad de daños estructurales, económicos y emocionales mencionados en la Sentencia.

Luego de varios trámites que no hay porque detallar, el 13 de septiembre de este año, la apelante presentó *Moción en cumplimiento de Orden y Sometiendo Transcripción*. En cuanto a este escrito, se suscitó una controversia, puesto que la parte apelada reclamó que la transcripción sometida fue preparada por la apelante; quien se desconocía si era una transcriptora certificada. A los fines de resolver el asunto relacionado a la reproducción de la prueba oral, el 20 de septiembre de 2024 emitimos *Resolución* mediante la cual establecimos el término que tendría la apelante para entregarle a la parte apelada la regrabación de los procedimientos obtenida y aquel en el que esta última parte debía someter las objeciones a esta. También, indicamos la fecha en la que debía la apelante someter su alegato suplementario y el último día en que la parte apelada podía oponerse al mismo.

El 27 de septiembre de 2024, la parte apelada sometió *Moción en Cumplimiento de Resolución*, en la que sometió sus objeciones a la

transcripción presentada por la apelante. Allí, expuso que, "a pesar de pretender ser un fiel relato de los trámites en instancia, el documento contiene múltiples errores y omisiones que impiden que este se pueda considerar una transcripción fiel y exacta de la prueba oral que desfiló en instancia." Asimismo, detalló a modo de ejemplo algunos de los errores u omisiones que encontró sobre la transcripción que impedían que esta pueda considerarse como una reproducción correcta de la vista en su fondo. Empero, pese a los múltiples errores que contiene, manifestó no tener reparo en que recibamos el documento como una exposición narrativa de la prueba oral. Ello así, toda vez que las fallas eran inconsecuentes para evaluar los errores señalados, "pues permiten que al menos se vea un recuento de la prueba vertida en el juicio."

Unos días después, conforme establecido, la apelante presentó su Alegato Suplementario, así como *Moción se Tome Conocimiento e Informativa*. El apelado por su parte, el 4 de octubre del año en curso, sometió su *Alegato en Oposición al Alegato Suplementario del Apelante*.

Luego de haber leído la transcripción de la prueba oral sometida por la apelante, así como las objeciones levantadas por la parte apelada, acogemos esta como una exposición narrativa estipulada y procedemos a resolver.

-II-

**Los daños y el proceso valorativo de éstos**

*A.*

En este caso, los hechos que motivaron la *Demanda* ocurrieron previo a la entrada en vigor del nuevo Código Civil de 2020, hoy vigente. Por ende, a la controversia ante nos le aplican los preceptos del derogado Código Civil de 1930. Es decir, el derecho citado y aplicado en este caso será aquel vigente al momento de los hechos.

El Código Civil de 1930 regula lo relativo a la responsabilidad civil extracontractual. Específicamente, el Artículo 1802 establece la obligación de reparar daños causados en los que medie culpa o negligencia.[5] En lo pertinente, el citado Artículo dispone:

> El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización. *Id.*

Para reclamar el resarcimiento por los daños y perjuicios al amparo del arriba mencionado Artículo, debe establecerse: (1) la existencia de un daño real, (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión, el cual tiene que ser culposo o negligente. Sucn. Mena Pamias et al. v. Jiménez Meléndez et al., 212 DPR 758 (2023) al citar a Cruz Flores et al. v. Hosp. Ryder et al, 210 DPR 465, 466 (2022); Pérez et al v. Lares Medical, et al., 207 DPR 965, 976 (2021) y otros. El requisito de "acción u omisión negligente o culposa" se refiere a aquella falta del debido cuidado al no anticipar y prever las consecuencias racionales de un acto, o la omisión de un acto, que una persona prudente y razonable habría previsto en las mismas circunstancias. *Íd.* Por su parte, el concepto de "culpa" del Artículo 1802, *supra*, es tan infinitamente abarcador como lo suele ser la conducta humana. Nieves Díaz v. González Massas, 178 DPR 820, 823 (2010); López v. Porrata Doria, 169 DPR 135 (2006). Por ello, ésta se debe analizar con un criterio amplio. Nieves Díaz v. González Massas, *supra*.

Sobre el requisito de la "relación causal entre daño y culpa o negligencia", rige en Puerto Rico la doctrina de la causalidad adecuada. Conforme a ella, se considera causa aquella condición que ordinariamente produciría el daño, según la experiencia general. Camacho Rivera v. Richard Mitchell, Inc., 202 DPR 34 (2019) y otros allí citados. De otra parte,

---

[5] 31 LPRA Sec. 5141.

en cuanto al requisito de "daño", nuestro más alto foro ha expresado que éste constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención de una norma jurídica y por el cual ha de responder otra persona. Nieves Díaz v. González Massas, *supra.*

En lo correspondiente a la estimación y valoración de los daños, repetidamente se ha afirmado que la tarea judicial de estimar y valorar los daños es una compleja y delicada debido a que no existe un sistema de computación que permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. Semidey et al. v. Fcia. Belmonte et al., 211 DPR 222 (2023), al citar a Herrera, Rivera v. S.L.G. Ramírez-Vincéns, 179 DPR 774, 791 (2010) y otros.

Ese ejercicio de valoración de daños involucra cierto grado de especulación y elementos subjetivos, que dependen en cierto grado, en el sentido de justicia y conciencia humana del juzgador de los hechos. Sucn. Mena Pamias et al. v. Jiménez Meléndez et al., *supra,* a la pág. 770 y casos allí citados. Al realizar dicha tarea, los tribunales sentenciadores deberán considerar concesiones otorgadas en casos anteriores, ajustándolas al valor presente. *Id.* De igual forma, y luego de evaluar aquellos casos comparables, deberán tomar en consideración las circunstancias particulares del caso ante su consideración. Entiéndase pues, que no puede descansarse meramente en un cálculo matemático. *Íd.*

*B.*

**El avalúo de la prueba**

La Regla 110 de Evidencia, por su parte, dispone que, "será el juzgador de hechos quien deberá evaluar la prueba presentada con el propósito de determinar cuáles hechos fueron establecidos o demostrados".[6] Es por esta razón que es una norma firmemente establecida

---

[6] 32 LPRA Ap. VI, R. 110

que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos en la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Pena Rivera v. Pacheco Caraballo, 2024 TSPR 48, 213 DPR ___. Esta deferencia judicial, está predicada en que los jueces de las salas de instancias están en mejor posición de aquilatar la prueba testifical debido a que estos tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo. *Íd.*, al mencionar a Ortiz Ortiz v. Medtronic, 209 DPR 759, 778 (2022) y otros.

Existe error manifiesto cuando el foro apelativo queda convencido de que existe un conflicto entre las conclusiones alcanzadas por el Tribunal de Primera Instancia y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. Entiéndase pues, cuando la apreciación de la prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble. *Íd.*

-C-

En nuestro ordenamiento jurídico, como norma general, la evidencia pertinente es admisible. Sin embargo, cuando aplique alguna de las reglas de exclusión reconocidas o aquellas dispuestas en la Regla 403 de Evidencia, pudiera excluirse evidencia pertinente. Izagas Santos v. Family Drug Center, 182 DPR 463, 466 (2011). La mencionada regla establece qué evidencia pertinente podrá ser excluida cuando su valor probatorio queda sustancialmente superado por el riesgo de causar perjuicio indebido, de causar confusión o de causar desorientación del Jurado; la dilación indebida de los procedimientos o una innecesaria presentación de prueba acumulativa.[7]

Si una parte entiende que el tribunal admitió erróneamente evidencia debe, conforme a la Regla 104 de Evidencia, presentar una

---

[7] Regla 403 de Evidencia, 32 LPRA Ap. VI R. 403.

objeción oportuna, específica y correcta. En caso de que se trate de una exclusión errónea de prueba, la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. Regla 104 de Evidencia, 32 LPRA Ap. VI R. 104.

Pese a lo antes dicho, los tribunales apelativos no revocarán una sentencia por admisión errónea de evidencia, a menos que el error haya sido, "un factor decisivo o sustancial en la sentencia emitida". Regla 105 de Evidencia, 32 LPRA Ap. VI R. 105. Así, si el error se considera benigno o no perjudicial- porque la exclusión de la evidencia no hubiese producido un resultado distinto- se confirma el dictamen a pesar del error. Pueblo v. Santiago Irizarry, 198 DPR 35, 36 (2017) al citar a Izagas Santos v. Family Drug Center, *supra*.

-III-

Al comparecer ante nos en su recurso de *Apelación* para atacar la sentencia apelada a modo de primer señalamiento de error, la apelante argumenta que la falta de una enmienda a la *Contestación a Demanda* por parte del apelado en la que cambiara aquellas alegaciones que negó por falta de información, obligaba al foro primario a dar por ciertas cada una de estas al dictarse la *Sentencia*. Así pues, cuestionó alguna de las determinaciones de hechos enunciadas por el TPI, por entender que son contrarias a las alegaciones incluidas en su *Demanda* que, conforme reclamó, debían acogerse.

De otra parte, en su segundo señalamiento, la apelante lista 35 determinaciones de hechos que propuso al TPI y a su entender debían adicionarse a la *Sentencia*, más erróneamente no se agregaron. Asimismo, al argumentar el tercer error señalado, asevera que la concesión de daños a su favor fue una excesivamente baja que no consideró todas sus circunstancias,

la ausencia de testimonio y prueba documental por parte del apelado y el mal manejo de la reclamación por parte de Triple S Propiedad.

El apelado, por su parte, en su primera comparecencia afirma que ninguno de los errores señalados fue cometido. Así, establece que la solicitud de la apelante al amparo de la Regla 6.2 es improcedente, puesto que el expediente judicial evidencia que sí enmendó sus alegaciones responsivas. De igual manera, expone que el tribunal realizó el ejercicio valorativo de los daños conforme la prueba presentada por la apelante y que las conclusiones alcanzadas por el foro primario descansan en la evidencia sometida, por lo que debe respetarse la adjudicación y valoración de daños realizada por el TPI. De otro lado, al oponerse al alegato suplementario, este afirma que dicho documento es esencialmente una réplica de la *Apelación* con algunas referencias a la transcripción añadidas, mediante las que la apelante falló en rebatir la deferencia judicial que la apreciación de la prueba merece.

Según expresamos en el acápite que recoge el derecho aplicable de esta sentencia, los foros revisores no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad o la formulación de determinaciones de hechos que realicen los tribunales de primera instancia a menos que se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto. Analizada la prueba sometida por las partes durante el juicio en su fondo, determinamos que la *Sentencia* dictada en el caso, así como la posterior *Resolución en Reconsideración* emitida, deben ser confirmadas. Explicamos.

En primer lugar, es cierto- como señala la apelante al discutir su primer error- que la Regla 6.2 de Procedimiento Civil, *supra,* obliga a cualquier demandado que niegue cualquier alegación por falta de información o conocimiento a investigar la certeza del hecho alegado y enmendar su contestación a la demanda dentro del término fijado por el

tribunal. Igual de correcto es que, si luego del descubrimiento de prueba, no le es posible constatar las aseveraciones negadas, debe enmendar su alegación responsiva para negarlas o de lo contrario estas se considerarán admitidas.[8] Sin embargo, es equivocada su premisa de que el apelado no enmendó aquellas alegaciones responsivas que negó por falta de información y creencia para proceder a negarlas.

Tal hecho surge claramente del acápite III-B sobre *Enmiendas a las Alegaciones* del *Informe de Conferencia Preliminar Entre Abogados,* sometido en el caso en el que la parte demandada consignó lo siguiente: "Las que surgen del presente informe. Se reafirman defensas afirmativas presentadas en la Contestación a Demanda. Además, cualquier alegación responsiva en la Contestación a Demanda que se haya negado por falta de información queda negada de plano." Siendo ello así, a la situación de hechos del caso no le eran aplicables las disposiciones de la Regla 6.2 de Procedimiento Civil.

Segundo, vemos que, al discutir su segundo señalamiento de error, la apelante reclamó que debieron añadirse a la *Sentencia* al menos 36 determinaciones de hechos adicionales de las 41 que peticionó al TPI incluyera. Así, por ejemplo, en su recurso solicitó que se añadieran como hechos adicionales que el señor Leith Pérez no asistió al juicio y que este, ni Triple-S, contestaron la demanda enmendada.[9] También, propuso que-entre muchas otras cosas- se:

(1) incluyeran hechos adicionales dirigidos a establecer el incumplimiento de la aseguradora con ciertas disposiciones del Código de Seguro;[10]

(2) dieran por admitidas 8 de las alegaciones levantadas en la *Demanda*, pues no fueron controvertidas conforme la Regla 6.2 de Procedimiento Civil, *supra;*[11]

---

[8] Véase Regla 6.2 (b) y (c) de Procedimiento Civil, *supra*.
[9] Hechos adicionales propuestos: F, G y H.
[10] Hechos adicionales propuestos: M, N, y O.
[11] Hecho adicional propuesto P.

(3)     determinara que el tribunal nunca realizó una inspección ocular;[12] y

(4)     estableciera que el señor Leith Pérez conocía el riesgo que el árbol representaba para la propiedad en controversia al mutilarlo con el fin de construir ilegalmente una segunda planta de zinc y madera en su residencia, una escalera para acceder a esta, así como una casa de árbol que construyó posteriormente;[13]

Ahora bien, advertimos que, en su escrito de apelación la apelante sólo enumeró los hechos que entendía debían añadirse. Más allá de listarlos, no incluyó argumento o explicación alguna en apoyo a su pretensión. Por su parte, en su alegato suplementario, exclusivamente añadió en 11 de los hechos propuestos la correspondiente referencia a las páginas de la transcripción que estima apoya su contención. Nos parece que la somera discusión efectuada por la apelante no derrotó la deferencia que debemos observar hacia el avalúo de la prueba efectuado por el TPI y sobre qué determinaciones de hechos encontró probadas conforme a la misma. Por esta razón, no intervendremos.

Por último, aunque cuestiona la cantidad que le fue concedida en daños, más allá de citar el derecho aplicable, la apelante solamente planteó que la concesión otorgada era una excesivamente baja, "sin tomar en consideración todas sus circunstancias, la ausencia de testimonio y prueba documental del apelado, Leith Pérez, y el mal manejo de Triple SSS Propiedad.". Asimismo, se limitó a reclamar que el foro primario no podía perder de perspectiva que, al momento de los hechos, era "una anciana incapacitada legalmente por sus problemas de visión baja"; que "[s]obreponiéndose a eso, mitigó los daños causados por los coapelados."; que el TPI no consignó la jurisprudencia utilizada para la valorización de los daños.[14] También, le atribuyó a Triple S un manejo inadecuado de la reclamación.

---

[12] Hecho adicional propuesto R.

[13] Hecho adicional propuestos S, T, U y V.

[14] Es meritorio señalar, no obstante, que en la página 27 de la *Sentencia* el Tribunal sí identificó como comparable el caso Anqueria Pérez v. Pérez Rivera, KLAN200900753. De

En cuanto a la cuantía de los daños concedida, el TPI en su *Sentencia*

consignó lo siguiente:

> La propiedad que heredó la demandante dos meses antes del paso del huracán Irma, es una propiedad construida entre 1960 y 1961 de concreto armado. La propiedad está localizada en un área cerca del mar, por lo que está más afectada por el salitre. **A excepción del cambio de ciertas ventanas y decoración interior, no surge de la prueba sometida, prueba suficiente que convenza al Tribunal de que la propiedad en controversia era una que recibía el mantenimiento constante y adecuado.** Al contrario, **de las fotos sometidas por la parte demandante podemos notar que muchos de los alegados daños reclamados por ésta, corresponden a grietas y desprendimiento de plafón que no es compatible con el impacto de unas ramas sobre una parte del techo de una de las estructuras. En relación con la prueba traída por la parte demandante en cuanto al peso y estruendo que pudo causar las ramas del árbol en la propiedad, este Tribunal no le mereció credibilidad.** El testimonio pericial de la parte demandante en cuanto a los cálculos para establecer el espesor de dichas ramas y por tanto su peso, resultó sumamente especulativo y no nos convenció. **Por otra parte, no resulta creíble aun con la prueba de la propia parte demandante, que el impacto de las ramas al sur de la estructura haya causado daños estructurales consistentes en grietas, desprendimiento de losas, concreto, descuadre de todas las ventanas y puertas, cuando no surge de la prueba que dicho impacto haya tenido el efecto de romper una figurita, decoración interior, estantes caídos y cuadros o algún otro objeto de decoración no anclado a la estructura.**
>
> **Por tanto, se concluye que algunos de los daños alegados por la parte demandante fueron exagerados e inconsistentes con el impacto de las ramas del árbol.** Por otra parte, no podemos perder de perspectiva que la señora demandante alegó pérdida de ingresos por no poder operar la hospedería ni poder continuar con el compromiso de venta de la propiedad. Sin embargo, contrario a lo alegado, la prueba demostró que la hospedería no estaba en funciones previo al paso de los huracanes porque precisamente había que hacer unos arreglos. Además, luego del paso de los huracanes, quedó establecido que aún si hubiesen querido operar, ello no era posible por la situación de falta de energía eléctrica y emergencia que vivió toda la isla de Puerto Rico. Por otra parte, quedó establecido que la demandante -durante la pendencia de este litigio- vendió la propiedad por 1,300,000.00, es decir $400,000,00 más que el compromiso de venta que tenía antes del paso del huracán. En vista de ello, se desestima la reclamación de daños y perjuicios por enriquecimiento injusto, pérdida de ingresos y pérdida del valor de la propiedad.
>
> Ahora bien, en relación con los daños probados, este Tribunal determina reconocer la mayoría de las facturas presentadas por la parte demandante y que no fueron objetadas. Dicha cuantía suma $7,862.82. En vista de ello, se concede dicha cantidad en compensación por los gastos incurridos por la demandante para reparar los daños a la estructura. (Énfasis suplido)

---

igual forma, en el escolio 14 del dictamen, explicó el cálculo matemático efectuado para alcanzar la cantidad concedida por angustias mentales.

Como se aprecia de la porción antes transcritas, la propia prueba de la apelante no convenció al tribunal que los daños sufridos por su propiedad a consecuencia de la caída del árbol fueran los reclamados. Más aún, según allí señalado, su testimonio en cuanto al peso y estruendo causado por el árbol al caer, así como sobre los daños estructurales que sufrió la propiedad le resultaron **poco creíbles**.

Es claro por las expresiones consignadas por el tribunal, que la juzgadora de hechos no solo estimó que los daños que la apelante reclamó en su *Demanda* **no se probaron**, sino que encontró que los mismos fueron exagerados e inconsistentes con el impacto de las ramas del árbol caído. Tras estudiar la prueba presentada durante el juicio y confrontar las expresiones vertidas por el foro primario en su *Sentencia* con los superfluos argumentos sometidos por la apelante, no encontramos razón por la cual debamos desviarnos de su apreciación de la prueba y así no lo haremos.

-**IV**-

Es por todo lo hasta aquí consignado que confirmamos la *Sentencia*, así como la *Resolución en Reconsideración* que fueran emitidas en el pleito de epígrafe.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones