Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| BELLA INTERNATIONAL GROUP, LLC H/N/C FLAGSHIP CHRYSLER<br><br>**APELADA**<br><br>v.<br><br>JASON CHRISTOPHER DORSETT<br><br>**APELANTE** | KLAN202400670 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: SJ2021CV04325 (0504)<br><br>Sobre: COBRO DE DINERO |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de enero de 2025.

El apelante, Jason Christopher Dorsett, solicita que revoquemos la sentencia por cobro de dinero que el Tribunal de Primera Instancia dictó en su contra.

La apelada, Bella Retail Group, no compareció a expresar su oposición al recurso.

**I**

Bella Retail Group, en adelante Bella, demandó por cobro de dinero al apelante. La demanda se presentó al amparo de la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V. Bella alegó que el 8 de mayo de 2021 vendió al apelante el vehículo de motor descrito en la demanda por el precio de ochenta mil cuatrocientos veintiún dólares con setenta y cinco centavos ($80,421.75). Según la demandante, el apelante pagó setenta y dos mil cuatrocientos veintiún dólares con setenta y cinco centavos ($72,421.75), pero se negaba a pagar el balance pendiente de ocho mil dólares ($8,000.00), a pesar de que reconocía su existencia. Bella adujo que todas sus gestiones de cobro fueron infructuosas. Por último, reclamó el pago de

Número Identificador

SEN2025 _____

honorarios por temeridad. La demanda estuvo acompañada con evidencia documental. Véase, pág. 4 del apéndice.

El apelante negó el reconocimiento de la deuda, pidió que el caso se ventilara por la vía ordinaria y autorizara presentar una reconvención. Véase, págs. 44 y 57 del apéndice. El TPI denegó su solicitud. El 14 de junio de 2022, ambas partes informaron que no habían podido llegar a un acuerdo. Véase, pág. 87 del apéndice. Durante la vista del 7 de diciembre de 2022, el abogado del apelante informó su interés en una transacción. El abogado de Bella alegó que el apelante no le había hecho una oferta. El TPI advirtió a las partes que este caso era idóneo para una transacción. El abogado de Bella solicitó una reunión en el estrado para auscultar una transacción. El foro apelado informó para récord que las partes no lograron un acuerdo transaccional. Véase, pág. 107 de la Transcripción.

El TPI declaró ha lugar la demanda en una sentencia en la que determinó los hechos a continuación. El 8 de mayo de 2021, el apelante adquirió el vehículo de motor Jeep Wrangler gris del año 2021 con número de serie IC4JJXFFM3MW605086. El apelante adquirió el vehículo mediante la orden de compra número 535069, en la que consta el precio de venta total setenta y nueve mil novecientos noventa y un dólares ($79,991.00). La orden está firmada por el concesionario y por el apelante. El apelante emitió un pago por la cantidad de setenta y dos mil cuatrocientos veintiún dólares con setenta y cinco centavos ($72,421.75). Determinaciones de hecho 2-6 de la sentencia apelada.

Según el TPI, también se probaron los hechos a continuación. El 8 de mayo de 2021, las partes suscribieron un Acuerdo suplementario y/o contingente con la advertencia siguiente, "verifique bien su factura, cualquier representación verbal realizada por el personal de ventas durante las negociaciones, no subsistirá a

menos que recoja por escrito en alguno de los documentos antes indicados". El apelante firmó ese acuerdo y el documento titulado Accesorios Pendientes, donde consta que Bella no le debía ningún accesorio. Ambas partes firmaron el documento titulado Conduce de entrega, en que el apelado autorizó la entrega del vehículo al apelante. Determinaciones de hecho 7-12 de la sentencia apelada.

Por último, el TPI determinó los hechos siguientes. El señor Ángelo Velázquez fue el vendedor que le vendió el vehículo al apelante. Además, preparó la Hoja de Trabajo y Acuerdo en la que está escrito *sky one touch*, el precio de venta es setenta y nueve mil novecientos noventa y un dólares ($79,991.00) y la codificación MW605086. El documento no está firmado por ninguna de las partes. Todos los documentos están en el idioma español. El apelante no domina el idioma español. No obstante, estuvo acompañado por Christian González Hernández, quien le tradujo y explicó los documentos relacionados con la compraventa. El apelante pagó ocho mil dólares ($8,000.00) menos de la cantidad establecida en la orden de compra. La apelada le requirió el pago de esa diferencia, pero sus gestiones de cobro fueron infructuosas. Determinaciones de hecho 13-24 de la sentencia apelada.

El TPI dio importancia a que el apelante no domina el idioma español y al contenido del acuerdo suplementario. No obstante, advirtió que el hecho de que el apelante no hable español no es suficiente para resolver a su favor. El foro apelado dio credibilidad al testimonio del vendedor. Según consta en la sentencia, el vendedor le explicó y tradujo al apelante todos los detalles necesarios para llevar a cabo la compraventa. El TPI no dio credibilidad a la versión del apelante porque admitió que: (1) nunca verificaba lo que firmaba, (2) no iba a leer los documentos, aunque se los tradujeran, (3) su mayor interés era completar la transacción, (3) no recordaba si la Orden de Compra que presentó la apelada era

la que llevó a su casa, (4) tenía un recuerdo vago de la hoja de trabajo en la que fundamentó la alegación de que nunca acordó pagar setenta y nueve mil novecientos noventa y un dólares ($79,991.00) por un vehículo que no tenía el accesorio que interesaba, (5) no recordaba donde estaba el documento con el precio descontado y (6) no sustentó sus alegaciones con evidencia documental.

El foro apelado dio peso al acuerdo suplementario suscrito por ambas partes en el que hicieron constar expresamente que, cualquier representación verbal, no subsistirá a menos que se recoja por escrito en alguno de los documentos antes indicados. La inclusión de esa advertencia llevó al tribunal a concluir que subsisten los acuerdos contenidos en los documentos presentados por Bella, independientemente de las negociaciones verbales o de los cómputos preliminares. El TPI confirmó que en ninguno de esos documentos se hizo la más mínima referencia al precio descontado de setenta y un mil novecientos noventa y un dólares ($71,991.00). Sin embargo, en la orden de compra, pudo constatar que el apelante (1) seleccionó libre y voluntariamente el vehículo sin el accesorio *sky one touch* y (2) adquirió el vehículo por el precio de setenta y nueve mil novecientos noventa y un dólares ($79,991.00). El TPI puntualizó que el precio de venta es el mismo en el idioma inglés y en español.

Por último, el tribunal determinó que el apelante actuó de forma temeraria desde que la apelada le requirió el pago extrajudicialmente. Según el TPI, la prueba presentada demostró las múltiples instancias en las que el Sr. Velázquez requirió al apelante el pago de lo adeudado y este le hizo creer que iba a pagar. El tribunal advirtió que agotó esfuerzos considerables para lograr una transacción, pero el apelante no lo permitió y sometió a la apelada a asumir las molestias y los gastos de un pleito innecesario.

Así concluyó que el apelante sufrió las consecuencias inevitables de sus actos y le ordenó pagar los ocho mil dólares ($8,000.00) adeudados a la apelada, ocho mil dólares ($8,000.00) de honorarios de abogado, los gastos y costas del pleito y el interés legal al cuatro punto veinticinco por ciento (4.25%), a partir del 1 de junio de 2021, fecha en que se le requirió pagar por primera vez.

El apelante presentó *Moción solicitando determinaciones de hechos y derechos adicionales y reconsideración.* La apelada expresó oposición. El 13 de junio de 2024, el TPI declaró No Ha Lugar la referida solicitud.

Inconforme, el apelante presentó este recurso en el que alega que:

> Erró el TPI al no desestimar la causa de acción de Bella por razón de falta de legitimación activa.

> Erró el TPI al limitarse a la documentación ante sí y no aplicar la hermenéutica desarrollada en materia de interpretación contractual.

> Erró el TPI al descansar exclusivamente en documentación incongruente e incompleta.

> Erró el TPI al conceder honorarios de abogado por temeridad por la cantidad de $8,000.00.

## II

### REGLA 60 DE PROCEDIMIENTO CIVIL

La Regla 60 de Procedimiento Civil, 32 LPRA Ap. V, establece un procedimiento sumario en los casos de cobro de dinero por una cantidad que no exceda $15,000.00. Su texto es el siguiente:

> Cuando se presente un pleito en cobro de una suma que no exceda los quince mil (15,000) dólares, excluyendo los intereses, y no se solicite en la demanda tramitar el caso bajo el procedimiento ordinario, la parte demandante deberá presentar un proyecto de notificación-citación que será expedido inmediatamente por el Secretario o Secretaria. La parte demandante será responsable de diligenciar la notificación-citación que será expedido inmediatamente por el Secretario o Secretaria. La parte demandante será responsable de diligenciar la notificación-citación dentro de un plazo de diez (10) días de presentada la demanda, incluyendo copia de esta, mediante entrega personal conforme a lo dispuesto en la Regla 4 o por correo certificado.

La notificación-citación indicará la fecha señalada para la vista en su fondo, que se celebrará no más tarde de los tres (3) meses a partir de la presentación de la demanda, pero nunca antes de quince (15) días de la notificación a la parte demandada. En la notificación se advertirá a la parte demandada que en la vista deberá exponer su posición respecto a la reclamación, y que si no comparece podrá dictarse sentencia en rebeldía en su contra.

La parte demandante podrá comparecer a la vista por sí o mediante representación legal. El tribunal entenderá en todas las cuestiones litigiosas en el acto de la vista y dictará sentencia inmediatamente. Como anejo la demanda, el demandante podrá acompañar una declaración jurada sosteniendo los hechos contenidos en la demanda o copia de cualquier otro documento que evidencie las reclamaciones de la demanda. Si la parte demandada no comparece y el tribunal determina que fue debidamente notificada y que le debe alguna suma a la parte demandante, será innecesaria la presentación de un testigo por parte del demandante y el tribunal dictará sentencia conforme a lo establecido en la Regla 45. Si se demuestra al tribunal que la parte demandada tiene alguna reclamación sustancial o en el interés de la justicia, cualquiera de las partes tendrá derecho a solicitar que el pleito se continue tramitando bajo el procedimiento ordinario prescrito por estas reglas o el tribunal podrá motu proprio ordenarlo, sin que sea necesario cancelar la diferencia en aranceles que correspondan al procedimiento ordinario.
.....

El propósito primordial de la Regla 60, *supra,* es agilizar y simplificar los procedimientos en acciones de reclamaciones de cuantías pequeñas. Así se facilita el acceso a los tribunales y una justicia más rápida, justa y económica. Las Reglas de Procedimiento Civil, *supra,* aplican supletoriamente, siempre que no sean incompatibles con el procedimiento sumario. El emplazamiento por edicto, la contestación a la demanda, el descubrimiento de prueba, las reconvenciones, la demanda contra terceros, entre otros, son incompatibles con el procedimiento sumario de la Regla 60. A diferencia del diligenciamiento personal que, es compatible, a pesar de no estar específicamente dispuesto en dicha regla. *RMCA v. Mayol Bianchi,* 208 DPR 100, 107-108 (2021); *Cooperativa v. Hernández Hernández,* 205 DPR 624, 630-632 (2020).

El Tribunal Supremo de Puerto Rico aclaró que antes de desestimar una demanda basada en la Regla 60, *supra,* hay que considerar su conversión al procedimiento ordinario. El foro primario está obligado a hacer esa consideración, independientemente de que haya transcurrido el plazo de 10 días para diligenciar la notificación-citación. *Cooperativa v. Hernández Hernández,* supra, pág. 628. Según el Tribunal Supremo de Puerto Rico, la redacción de la Regla 60, *supra,* se inclina hacia la conversión ordinaria del procedimiento y no a la desestimación. *Cooperativa v. Hernández Hernández,* supra, pág. 638. Fue enfático en que la desestimación en un procedimiento de Regla 60, *supra,* contraviene y hace impráctico el principio cardinal de solución justa, rápida y económica de las controversias y lesiona el debido proceso de ley y el acceso al foro judicial. *Cooperativa v. Hernández Hernández,* supra, pág.639.

La Regla 60, *supra,* permite que cualquiera de las partes solicite que el pleito continue tramitándose de forma ordinaria y el tribunal puede hacerlo *motu proprio.* La conversión del caso a ordinario no es automática, ya que es un asunto que el tribunal tiene que sopesar sus méritos. El Tribunal Supremo de Puerto Rico resumió las instancias en las que un caso puede convertirse en ordinario y son las siguientes: (1) el demandado demuestra que tiene una reclamación sustancial, (2) cuando las partes solicitan en el interés de la justicia que el pleito se ventile de forma ordinaria, (3) el tribunal tiene discreción para ordenarlo *motu proprio,* en el interés de la justicia y (4) la demandante no conoce ni provee el nombre y dirección del deudor, (5) es necesario emplazar por edictos. *RMCA v. Mayol Bianchi,* supra, pág. 108; *Cooperativa v. Hernández Hernández,* supra, págs. 637- 638.

## NORMA DE LA DEFERENCIA

Tan reciente como en *Peña Rivera v. Pacheco Caraballo,* 2024 TSPR 48, 213 DPR ___ (2024), el Tribunal Supremo de Puerto Rico reiteró la norma de no favorecer la intervención de los tribunales apelativos en la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hecho del Tribunal de Primera Instancia. No obstante, advirtió que esa norma no aplica en los casos en los que el Tribunal de Primera Instancia incurrió en error manifiesto, prejuicio, parcialidad o pasión. La tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o de la jueza a la prueba presentada. El foro primario es el que esencialmente realiza ese trabajo. La deferencia judicial está predicada en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical, porque tienen la oportunidad de oír y ver el comportamiento del testigo. El TPI comete un error manifiesto, cuando el foro apelativo queda convencido de que sus conclusiones confligen con el balance más racional y justiciero de la totalidad de la evidencia. El error manifiesto es una apreciación de la prueba distanciada de la realidad fáctica o inherentemente imposible o increíble.

## DOCTRINA GENERAL DE LOS CONTRATOS

El contrato es un negocio jurídico bilateral. A través del contrato, dos o más partes prestan su consentimiento conforme establece la ley con el propósito de crear, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751. Los contratantes pueden acordar cualquier cláusula que no sea contraria a la ley, la moral o el orden público. Los contratos tienen fuerza de ley entre las partes, sus sucesores y terceros y se perfeccionan desde la prestación del consentimiento. No obstante, esta norma no aplica a los contratos que requieren el cumplimiento

de una formalidad o en los que se pacta una condición suspensiva. Arts. 1232, 1233 y 1237 del Código Civil de 2020, 31 LPRA secs. 9753, 9754 y 9771. La facultad de resolución está implícita en los contratos con prestaciones recíprocas. El incumplimiento de una obligación es causa para la resolución extrajudicial del contrato, sujeto a las reglas establecidas. Art. 1255 del Código Civil, 31 LPRA sec. 9823.

## LEGITIMACIÓN ACTIVA

La doctrina de legitimación activa está basada en el principio de justiciabilidad. El ejercicio del poder judicial está atado a la existencia de un caso y controversia. *Rivera Segarra y otros v. Rivera Lassen y otros,* 2024 TSPR 66, 213 DPR ___ (2024). Los tribunales solo pueden evaluar los méritos de un caso justiciable. La intervención judicial, solo será posible, si existe una controversia genuina entre partes opuestas con un interés real en un remedio que afecte sus relaciones jurídicas. La legitimación es la capacidad requerida al promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y obtener una sentencia vinculante. *Rivera Segarra y otros v. Rivera Lassen y otros,* supra. Los tribunales examinan la legitimación activa para delimitar su propia jurisdicción, no adentrarse en otras ramas de gobierno y no lanzarse a resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado. La parte que solicita un remedio judicial debe demostrar que: (1) ha sufrido un daño claro y palpable, (2) el daño es real inmediato y preciso, no abstracto ni hipotético, (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada y (4) la causa de acción surge al palio de la constitución y una ley. *Hernández, Santa v. Srio. de Hacienda,* 208 DPR 727, 738-739 (2022).

**HONORARIOS POR TEMERIDAD**

La Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, autoriza a los tribunales a ordenar en la sentencia, el pago de honorarios por temeridad. La sanción procede contra el abogado o la parte perdidosa que actuó con temeridad o frivolidad. El objetivo de la sanción es disuadir la litigación frívola, compensar a la parte que no ha sido temeraria por los gastos incurridos y fomentar las transacciones. El concepto de temeridad no está definido en las Reglas de Procedimiento Civil, *supra.* El Tribunal Supremo de Puerto Rico ha delimitado sus contornos. El concepto temeridad es amplio e incluye las actuaciones de un litigante que: (1) ocasionan un pleito que pudo evitarse, (2) prolongan indebidamente el trámite judicial u (3) obligan a la otra parte a gastos innecesarios para hacer valer sus derechos. Un litigante perdidoso es temerario cuando, su terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista, obliga a la otra parte innecesariamente a las molestias, gastos e inconvenientes de un pleito. *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 145-148.

La facultad de imponer honorarios de abogado y de determinar su procedencia es la mejor arma que tienen los tribunales para gestionar eficientemente los procedimientos judiciales y la administración de la justicia. Igualmente, es la mejor arma para proteger a los litigantes de la dilación y gastos innecesarios. La parte que insiste contumazmente en alegar algo sin prueba fehaciente, que niega hechos que le constan o que son de fácil corroboración y que dilata los procesos judiciales para no responder por sus obligaciones es temeraria. Además, es temerario el que niega totalmente su responsabilidad por los hechos que motivan la demanda. *SLG González-Figueroa v. SLG et al.,* supra, pág. 150. La imposición de honorarios de abogado por temeridad

descansa en la sana discreción judicial que solo será variada en apelación, cuando se demuestra un abuso de discreción. *SLG González-Figueroa v. SLG et al.,* supra, pág. 150.

**III**

El apelante cuestiona la legitimación activa de Bella Retail Group para presentar la demanda. El señor Dorsett alega que la apelada no sufrió ningún daño, porque se apropió de la comisión del vendedor y que su intención es enriquecerse doblemente. El apelante sostiene que, de existir una causa de acción, sería del vendedor que declaró que esperaba la culminación del caso, para saber si podía recuperar su dinero completo.

El primer señalamiento de error no se cometió. Los fundamentos del apelante para cuestionar la legitimación de la apelada son irrazonables e hipotéticos, porque están basados en la posibilidad de que el vendedor presente una acción judicial contra la apelada. Bella Group tiene legitimación activa porque era la propietaria del vehículo en controversia. La apelada vendió el vehículo a la apelante, haciendo negocios como Flagship Chrysler. Bella Group sufrió un daño claro, palpable, real, inmediato y preciso, no abstracto ni hipotético, porque no recibió ocho mil dólares ($8,000.00) del precio de venta acordado. La conexión entre el daño sufrido y la causa de acción ejercitada es evidente. Bella presentó la demanda para vindicar la pérdida económica sufrida por el incumplimiento contractual del apelante con el pago acordado. La causa de acción de Bella surge al palio de las disposiciones de ley que cobijan el cumplimiento de las obligaciones contractuales.

Los señalamientos de error segundo y tercero serán discutidos conjuntamente, porque en ambos el apelante cuestiona el valor probatorio de la evidencia documental y testifical.

El señor Dorsett sostiene en el segundo señalamiento de error que el TPI no aplicó la doctrina de derecho contractual a los hechos

probados y se limitó a resolver a base de la evidencia documental. El tercer señalamiento de error es un ataque a la evidencia documental que cataloga como insuficiente y contradictoria.

El apelante inicia su discusión del segundo señalamiento de error, con la premisa incorrecta de que el TPI nunca se expresó sobre las determinaciones de hechos propuestas. El TPI atendió el asunto porque declaró no ha lugar la moción en la que el apelante solicitó reconsideración y/o determinaciones de hechos adicionales.

El apelante cuestiona la apreciación de la prueba del foro apelado. Según el apelante, el TPI ignoró que las partes renegociaron el precio de venta, porque la apelada no tenía disponible el accesorio que interesaba. El apelante aduce que los testimonios probaron que Bella aceptó el pago por la cantidad realizada. El señor Dorsett aduce que Bella no entrega los vehículos que se pagan en efectivo, a menos que haya recibido el precio de venta en su totalidad. El apelante argumenta que, la entrega del vehículo demuestra la existencia de un acuerdo distinto al que surge de la evidencia documental. El señor Dorsett sostiene que firmó los documentos por su falta de conocimiento del español y debido a lo que le hizo creer el vendedor.

El TPI no cometió los errores segundo y tercero porque su decisión está basada en la credibilidad que dio a la prueba testifical y documental. Al apelante le ha sido imposible derrotar la adjudicación de credibilidad que hizo el foro primario. Su testimonio, al igual que al TPI, no nos merece credibilidad porque fue ambiguo y ambivalente. El apelante reconoció su firma en la orden de compra, en la que consta que el precio de venta del vehículo era setenta y nueve mil novecientos noventa y un dólares ($79,991.00). Véase, pág. 224 del apéndice. Su testimonio fue ambivalente, porque dijo que parecía su firma. No obstante, declaró que no recordaba haber firmado ese documento. El apelante admitió

que en la orden de compra no constaba la reducción del precio de venta. Véase, pág. 226 del apéndice. El señor Dorsett presumió que su firma era la que estaba en el Acuerdo Suplementario, porque era parecida. Véase, págs. 233-234 del apéndice. Aunque declaró que la orden de compra no era del vehículo que llevó a su residencia, no tenía idea dónde estaba esa orden y reconoció que era muy malo manteniendo documentos en orden. Véase, pág. 236 del apéndice.

El apelante reconoció que la firma en la Renuncia de Derechos parecía suya. Su testimonio fue ambivalente, porque dijo no estar seguro porque la firma era un garabato y no recordaba si firmó el documento. Véase, pág. 237 del apéndice. Su testimonio fue básicamente el mismo cuando fue interrogado sobre el documento titulado Clientes de Entidades Financieras. El apelante dijo que la firma parecía suya, pero estaba presumiendo, porque no tenía idea, y no podía hacer promesas sobre algo que no sabía. Véase, pág. 239 del apéndice.

Los testimonios de la apelada son convincentes. Sus testigos probaron que el apelante adeudaba a la apelada ocho mil dólares ($8,000.00) del precio de venta del vehículo. El vendedor Ángel Iván Velázquez declaró que: (1) el apelante fue a buscar una unidad en particular, (2) él le mostró la unidad, (3) el apelante la seleccionó, (4) él le presentó el precio, (5) el apelante accedió a hacer el negocio por el precio que se mostró, (6) el apelante no pagó la cantidad que tenía que pagar por el vehículo y (7) el precio acordado fue setenta y nueve mil novecientos noventa y un dólares ($79,991.00) y el apelante solo pagó setenta y un mil novecientos noventa y un dólares ($71,991.00). Véase, págs. 264-265 del apéndice.

El testimonio del vendedor no controvertido nos lleva a concluir que el apelante tenía prisa por finiquitar el negocio. El testigo fue enfático en que el apelante quería estar fuera en cuarenta (40) minutos. Véase, pág. 266 del apéndice. El señor Velázquez

explicó que al apelante se le tradujeron los documentos. Además, declaró que el apelante: (1) no tenía dudas, (2) estuvo de acuerdo con el precio y (3) firmó los documentos frente a su persona, (4) pidió un techo panorámico que no existía, porque no había salido al mercado. El testigo negó que, como parte de la venta, se acordó poner algún accesorio o equipo en particular o que se le ofreció un descuento por no tener el accesorio. Véase, págs. 272, 274-275 y 280 del apéndice.

El señor Velázquez dijo que se enteró de la deficiencia en el pago, porque de contabilidad le comunicaron que faltaban ocho mil dólares ($8,000.00) del precio de venta del vehículo. Véase, pág. 274 del apéndice. No obstante, no supo explicar por qué el apelante pagó a la cajera una cantidad inferior a la acordada, debido a que no estuvo presente. Véase, págs. 273, 300 y 302 del apéndice. El testigo reconoció que entregó el vehículo al apelante cuando le dijeron que se hizo el pago, sin verificar la cantidad. Véase, pág. 302 del apéndice. El señor Velázquez dijo que llamó al apelante para que pagara la deficiencia, porque de lo contrario, se la iban a descontar de su sueldo. Véase, pág. 281 del apéndice.

Según el vendedor, el apelante le dijo que le pagaría directamente si Bella le retenía el pago. Él le explicó que estaba en riesgo de perder el empleo. El apelante le contestó que le iba a proveer un empleo de ciento cuarenta mil dólares anuales ($140,000.00) y a pagar los abogados para demandar a Bella. Véase, pág. 281 del apéndice. Los mensajes de textos entre ambos se presentaron como evidencia. Véase, pág. 288 del apéndice. No obstante, surge del testimonio del vendedor que, el apelante no cumplió ninguno de sus ofrecimientos. Véase, pág. 282 del apéndice. Fue enfático en que el apelante estaba mintiendo. Véase, pág. 289 del apéndice.

El gerente de ventas, Javier Ferrer Santos, confirmó que: (1) el apelante quería culminar el negocio en cuarenta y cinco (45) minutos, (2) el apelante inspeccionó el vehículo antes de comprarlo, (3) el vehículo vendido no tenía el accesorio que el apelante interesaba y (4) el apelante no recibió ningún descuento. Véase, págs. 314, 320-321 del apéndice. Ferrer explicó que los precios se asignan de acuerdo con el modelo del vehículo. Surge de su testimonio, que el precio de venta fue setenta y nueve mil novecientos noventa y un dólares ($79,991.00) y que fue establecido de acuerdo con el *vin number*. Véase, pág. 314 del apéndice. No obstante, admitió que autorizó la entrega del vehículo, sin verificar si el apelante pagó la cantidad acordada. Véase, pág. 326 del apéndice.

El apelante presentó el testimonio de Christian González Hernández. Su testimonio no nos merece credibilidad porque fue contradictorio. El testigo declaró que el apelante es su mejor amigo y que lo acompañó a comprar un jeep. Véase, pág. 374 del apéndice. El señor González Hernández explicó que el apelante quería comprar un jeep con *sky touch* y pidió un descuento porque la apelada no tenía una unidad con ese accesorio. Fue enfático en que el apelante no iba a comprar el vehículo si no recibía el descuento. Véase, pág. 375 del apéndice. Surge de su testimonio, que la apelada originalmente negó el descuento. Luego le hizo un ofrecimiento que el apelante aceptó. Una vez hizo el pago se llevaron el vehículo. Véase, pág. 376 del apéndice.

La credibilidad del señor González Hernández quedó minada durante el contrainterrogatorio. El testigo: (1) admitió que su recuerdo se afectó por el paso del tiempo, (2) recordó si le tradujo al apelante durante la transacción, (3) declaró que vio un documento con un descuento de ocho mil o diez mil dólares y, (4) se contradijo

porque no se acordó si el apelante pidió un descuento. Véase, págs. 377-378 y 380 del apéndice.

La evidencia documental confirma los testimonios de la apelada. El precio de venta que consta en la Orden de Compra es setenta y nueve mil novecientos noventa y un dólares ($79,991.00). La Orden de Compra está firmada por el apelante.

El Acuerdo Suplementario incluye la advertencia siguiente:

> Documentos del contrato. Aunque la orden de compra esté firmada por el vendedor, no obliga en forma alguna a la vendedora hasta tanto haya sido aprobada y firmada por uno de los oficiales de la casa. La orden de compra, el contrato de venta condicionada o de venta al por menor a plazo correspondiente, leasing y/o el contrato de hipoteca sobre bienes muebles, si la venta es a plazos, junto al presente Acuerdo Suplementario y/o Contingente y cualquier otro documento que hayan suscrito las partes al momento de la transacción contienen por escrito todas las condiciones del negocio jurídico representado en la orden de compra sin haberse hecho o extendido garantía y/o representación expresa o implícita alguna que no sean las contenidas en los referidos documentos. VERIFIQUE BIEN SU FACTURA CUALQUIER REPRESENTACIÓN VERBAL REALIZADA POR EL PERSONAL DE VENTAS DURANTE LAS NEGOCIACIONES NO SUBSISTIRÁ A MENOS QUE RECOJA POR ESCRITO EN ALGUNO DE LOS DOCUMENTOS ANTES INDICADOS.

El apelante firmó el acuerdo suplementario. Igualmente firmó la Renuncia de Derecho donde certificó que inspeccionó la unidad. Véase, pág. 12 del apéndice. El documento en el que se hacen constar los Accesorios Pendientes adeudados únicamente incluye el buen servicio. El apelante también firmó ese documento.

La Hoja de Trabajo y Acuerdo en la que está escrito *sky one touch*, el precio de venta de setenta y nueve mil novecientos noventa y un mil dólares ($79,991.00) y la codificación MW605086 no tiene la firma de ninguna de las partes.

Al igual que el TPI, concluimos que el apelante sufrió las consecuencias de sus actos. Su falta de dominio del idioma español no es excusa para incumplir con sus obligaciones contractuales. La prueba testifical demostró que el vendedor le tradujo los

documentos del negocio. Además, de que el apelante estuvo acompañado de un amigo que domina el español y que usualmente le sirve de intérprete. Los documentos presentados confirman el precio de venta de setenta y nueve mil novecientos noventa y un mil dólares ($79,991.00) y no existe constancia alguna de la inclusión del accesorio que alega el apelante, ni de un descuento.

Por último, el apelante cuestiona los honorarios por temeridad en su contra. El error señalado no se cometió. La temeridad del apelante es evidente porque: (1) insistió en litigar la controversia, a sabiendas de que en los documentos que firmó consta que el precio de venta era setenta y nueve mil novecientos noventa y un mil dólares ($79,991.00) y (2) rechazó todos los esfuerzos de la apelada y del tribunal para lograr una transacción. La terquedad y obstinación del apelante en defenderse injustificadamente ha ocupado el tiempo y los recursos del tribunal innecesariamente y sometido a la apelada desde el año 2021 a un pleito que pudo evitarse. El apelante no cuestionó la razonabilidad de la cantidad impuesta.

**IV**

Por los fundamentos antes expuestos se confirma la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones